Tangipahoa Parish Clerk of Court  20230000821
Filed Mar 13, 2023 10:45 AM                    D
Debi McCoy
Deputy Clerk of Court
FAX Received Mar 13, 2023

21ST JUDICIAL DISTRICT COURT FOR THE PARISH OF TANGIPAHOA

STATE OF LOUISIANA

NO.                                                              DIVISION "      "

LOUIS CARTER, III, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY
SITUATED

VERSUS

MCCLENNY, MOSELEY & ASSOCIATES, PLLC; JAMES MCCLENNY; JOHN
ZACHARY MOSELEY; H. WILLIAM HUYE; TORT NETWORK, LLC; and APEX
ROOFING AND RESTORATION, LLC

FILED:_____       _____
                                                   DEPUTY CLERK

PETITION FOR CLASS ACTION,
INJUNCTIVE RELIEF, AND DAMAGES

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Louis Carter, III,

who brings this lawsuit, individually and as representative of all those similarly situated, and

represents as follows:

PARTIES

1.

Plaintiff and Proposed Representative of the Plaintiff Class is:

A. Louis Carter, III is a person of the full age of majority domiciled in Tangipahoa

    Parish;

2.

The following parties are made Defendants:

A. McClenny Moseley & Associates, PLLC, a Texas Professional Limited Liability

    Company engaged in the practice of law, that is licensed to do and doing business in

    Louisiana, currently not in good standing with the Louisiana Secretary of State, with

    a principal business office in Houston, Texas and a registered office in Louisiana at

    1820 St. Charles Ave., New Orleans, LA 70130 (referred to in this Complaint as

    "MMA");

EXHIBIT
A

B. James McClenny, a person of the full age of majority domiciled in and a citizen of Texas, who is presently licensed to practice law in the State of Texas, and at all pertinent times was engaged in the practice of law;

C. John Zachary Moseley, a person of the full age of majority domiciled in and a citizen of Texas, who is presently licensed to practice law in the State of Texas, and at all pertinent times was engaged in the practice of law;

D. H. William Huye, a person of the full age of majority domiciled in and a citizen of Louisiana, who is presently licensed to practice law in Louisiana but has been suspended from the practice of law on an interim basis by the Louisiana Supreme Court;

E. Tort Network, LLC, an Arizona Limited Liability Company that is not registered with the Louisiana Secretary of State, but upon information and belief is doing business in Louisiana under the trade name "Velawcity" (referred to in this Complaint as "Velawcity"); and

F. Apex Roofing and Restoration, LLC, an Alabama Limited Liability Company licensed to do and doing business in Louisiana, with a principal business office in Birmingham, Alabama and a registered office in Louisiana at One Galleria Blvd, Suite 1900, Metairie, LA 70001 (referred to in this Complaint as "Apex");

Plaintiff reserves the right to add additional presently unknown Defendants for which the identities become known through investigation and discovery, and which are liable jointly, severally, and *in solido* along with the other Defendants.

## JURISDICTION AND VENUE

3.

The amount in controversy in this case and the subject matter upon which it is based are sufficient to justify jurisdiction in this Court pursuant to Louisiana Code of Civil Procedure Article 2.

4.

Venue is proper in this Court pursuant to Louisiana Code of Civil Procedure Articles 593, 42, 43, and 74, as at least part of the wrongful conduct occurred, and damages were

sustained in this Parish. Venue is further proper in this Court pursuant to La. Rev. Stat. Ann. § 37:213.1(E) as the unauthorized practice of law occurred in this Parish, damages were sustained in this Parish, and Plaintiff resides in this Parish.

## BACKGROUND

### 5.

On August 27, 2020, Hurricane Laura made landfall near Cameron, Louisiana as a Category 4 hurricane, causing catastrophic damage across Southwest Louisiana. Shortly thereafter, on October 9, 2020, the recovery efforts from Laura were hindered when Hurricane Delta made landfall as a Category 2 hurricane just fifteen (15) miles east of where Laura made landfall. Hurricane Zeta, a Category 3 hurricane, made landfall in Terrebonne Parish just nineteen (19) days later on October 28, 2020. The year 2021 was no kinder to the residents of Louisiana, as Hurricane Ida made landfall as a Category 4 hurricane in Lafourche Parish and caused billions in damages across the state.

### 6.

The fallout from these hurricanes, all of which occurred as the country was still in the throes of a global pandemic, was tremendous. Property owners were faced with massive damage to their residences and a shortage of contractors available to repair the damages. Insurers were inundated with thousands of property damage claims -- some folded and others pulled out of Louisiana entirely.

### 7.

In the wake of these hurricanes, when residents and property owners throughout Louisiana and elsewhere were at their most vulnerable, Defendants took unfair advantage to enrich themselves.

### 8.

MMA entered into agreements or otherwise conspired with Velawcity, Apex, and likely other entities presently unknown in a vast scheme involving making illegitimate claims to insurers in the state on behalf of clients that MMA did not actually represent.

9.

The actions taken by Defendants outlined in this Petition represent a pattern and practice of improper behavior that shocks the conscience and violates a number of Louisiana statutes.

**FACTUAL ALLEGATIONS**

10.

Plaintiff is the owner of a home located in Tangipahoa Parish that sustained damage to its roof in Hurricane Ida.

11.

Sometime thereafter, a man knocked on Plaintiff's door stating that he was from Apex and asking Plaintiff if he could take a look at Plaintiff's roof.

12.

The Apex representative also asked Plaintiff if Plaintiff had filed a claim with his insurance company and if he had talked to an adjuster.

13.

Plaintiff told the Apex representative that he was "waiting for the dust to settle" and then he planned to contact the insurance company.

14.

The Apex representative told him that if he used Apex to make the repairs to the roof, he could just pay Apex a $500 deductible instead of the 5% deductible that he would have to pay to the insurance company.

15.

The Apex representative then asked if he could take a look at Plaintiff's roof, free of charge, to assess the damage, to which Plaintiff agreed.

16.

After the Apex representative finished inspecting the roof, he told Plaintiff that Plaintiff's roof had sustained significant damage.

17.

Plaintiff asked the Apex representative how Apex benefitted from the arrangement the representative was discussing with him relating to the payment of the deductible. The Apex

representative told Plaintiff that if he went through insurance, he would still need a roofer, but by signing up with Apex, it would expedite the process.

18.

The Apex representative then had Plaintiff sign an "assignment of benefits" ("AOB"), which the Apex representative told him would allow Apex to reach out to Plaintiff's insurance company to "get the ball rolling" on the insurer contacting Plaintiff and getting an adjuster to come out and assess the damage.

19.

This AOB contained no mention of the law firm McClenny, Moseley, and Associates, PLLC ("MMA").

20.

Plaintiff's insurance company contacted Plaintiff approximately seven days after he signed the AOB and sent an adjuster out shortly after to assess the damage.

21.

Plaintiff's insurance company's adjuster inspected Plaintiff's property and said that the damage was nowhere close to as severe as Apex said it was.

22.

Sometime thereafter, Plaintiff's insurance company stopped communicating with him. Plaintiff tried contacting his insurance company on multiple occasions to see the status of his claim, but with no success.

23.

Eventually, Plaintiff was able to speak to the adjuster who inspected his property, who informed him off the record that his insurance company had been served with a letter of representation by MMA, who claimed that Plaintiff was their client, so the insurance company was no longer able to speak to Plaintiff directly.

24.

This was the first time Plaintiff had ever heard of MMA or heard that it was claiming to represent him.

25.

Plaintiff's insurance company sent Plaintiff a copy of the letter that MMA had sent to it purporting to represent Plaintiff.

26.

Subsequent to this revelation, Plaintiff tried contacting MMA on numerous occasions to inform MMA that he never signed up with it and did not want it representing him.

27.

After weeks of attempting to get someone from MMA on the phone, Plaintiff was finally contacted by an attorney from MMA.

28.

Plaintiff informed this attorney that he did not know who MMA was and had never solicited its services.

29.

The attorney from MMA started explaining the benefits of signing up to have MMA represent him, telling Plaintiff that Plaintiff would receive more from the insurance company if MMA was representing him because MMA could file suit against the insurance company for delay in settling his claim.

30.

Plaintiff stated to the attorney from MMA that he never agreed to have MMA represent him and did not want MMA to represent him. Plaintiff stated that he wanted to deal with the insurance company directly.

31.

Plaintiff's insurance company told him that it could not deal directly with him unless MMA sent the insurance company a letter confirming that MMA did not represent him.

32.

Plaintiff called MMA every single day for weeks and sent multiple texts to MMA's attorney who reached out to him repeating that he did not want to be represented by MMA and asking MMA to send a letter to his insurance company confirming that MMA did not represent Plaintiff.

33.

MMA finally sent a letter to Plaintiff's insurance company on May 4, 2022, but instead of admitting that MMA never represented Plaintiff, MMA titled the letter "Notice of Withdrawal of Representation" and stated that the firm "will not be representing Louis Carter *any further* in connection with the above-referenced claim for damages occurring on December 6, 2021." (Emphasis Added).

34.

This letter was signed by Defendant Huye as Louisiana Managing Partner of MMA.

35.

MMA also sent a similar letter directly to Plaintiff with the same date as the one sent to Plaintiff's insurance company.

36.

Also titled "Notice of Withdrawal of Representation" this letter contained a statement referencing a "Contract for Legal Services" dated March 31, 2022 that the letter stated was being voided in accordance with this "withdrawal" of the representation.

37.

Plaintiff never signed a Contract for Legal Services with MMA on March 31, 2022 or any other date.

*The Apex Scheme*

38.

Plaintiff's experience dealing with MMA and Apex is similar to the experience of countless others across the State of Louisiana who had run-ins with Apex and MMA, and serves as one example of the schemes perpetrated by Defendants that have caused damage to the class of persons alleged in this Petition.

39.

MMA, and its principals, conspired with Apex to perform improper solicitation of employment for MMA's economic benefit in connection with property damage claims from Hurricane Ida and other storms in 2020-2022.

40.

With the full knowledge and consent of MMA and its principals, Apex approached property owners throughout southern Louisiana and informed the property owners that their property sustained damage from a storm that needed to be repaired.

41.

In many instances, Apex represented to the property owner that the damage called for replacement of the entire roof.

42.

Apex then offered to perform the work, and informed the property owners that the property owner's insurance would cover it.

43.

All the property owner had to do, according to Apex, was pay Apex a deductible and then sign two documents – a Work Order and an Assignment of Benefits.

44.

The Work Order provided for the repairs/replacements to be made at a rate that was typically much higher than the market rate for such work.

45.

In the Assignment of Benefits, the property owners agreed to assign their post-loss rights of recovery to Apex. The Assignment of Benefits bestowed all legal rights to Apex Roofing, including the right to make a claim against the insurer for the property owners.

46.

Neither the Work Order nor the Assignment of Benefits contain any reference to MMA.

47.

Despite the language in the Assignment of Benefits assigning the property owner's right to make a claim against the insurer to Apex, Apex wrongfully conspired with MMA, and its principals, to present the property owner's claim to the insurance company by MMA falsely acting as counsel for the property owners.

48.

Without having a signed engagement letter from the property owner, MMA would reach out to the insurer with a letter of representation. In this letter, MMA purported to represent the property owner and demanded that MMA be listed as a payee on any payment or draft made from this point forward.

49.

The letter of representation also required that all checks be sent to MMA's headquarters in Houston, Texas, and requested that non-public, confidential insurance information about the property owner be sent from the insurer to MMA.

50.

In fact, the only interests that MMA actually represented were Apex's, not the property owners.

51.

Through the misrepresentations of Apex and MMA, MMA received both confidential information and correspondence regarding the property owners' claims, as well as settlement funds from the insurers in many instances.

52.

In many cases, upon receiving these checks, MMA would forward the checks to the mortgage holder of the property for endorsement and would deposit the checks into MMA's IOLTA account -- all without informing the property owner that the checks had been issued.

53.

This scheme insured that MMA would receive an unwarranted and unearned fee and Apex would obtain the balance of the funds issued by the insurance company.

54.

MMA also endorsed a number of checks on behalf of insureds they purported to represent pursuant to alleged powers of attorney.

55.

A number of checks were also issued to MMA and its purported clients but remain unnegotiated. Some of these checks are now stale and no longer negotiable due to the passage of time since their issuance.

*The Velawcity Scheme*

56.

MMA also conspired with Velawcity to engage in unlawful and deceptive solicitation of employment.

57.

MMA and Velawcity entered into several "Marketing Service Agreements" on December 8, 2021, February 5, 2022, May 5, 2022, May 23, 2022, and August 2, 2022 ("MSA" or "MSAs").

58.

In these MSAs, Velawcity agreed to act as agent of MMA to reach out to potential clients on MMA's behalf and provide potential clients with MMA's engagement letter.

59.

MMA agreed in these MSAs to pay Velawcity a set amount per "pre-screened potential client" that was "delivered" to MMA.

60.

In total, through these Marketing Service Agreements, MMA appears to have paid Velawcity in advance a minimum of $13,938,000 for at least 4,628 clients.

61.

To deliver on its obligations under these MSAs, Velawcity sent out unsolicited communications to thousands of individuals via text message and other means, that the recipient has a hurricane storm damage claim pending.

62.

These communications contained a link to a form and stated that the form needed to be filled out in order to claim compensation. Some of these communications even contained specific instructions for how the recipient should answer the questions on the form.

63.

These communications did not contain the word "ADVERTISEMENT" or in any other way indicate that they were advertising material for MMA or for MMA's services.

64.

All of these communications were sent by Velawcity at the direction of and for the benefit of, William McClenny and John Zachary Moseley, principals of MMA, and H. William Huye, managing partner of MMA's Louisiana office.

65.

Individuals who clicked on the link were taken to a website that contained no mention of MMA, either in the web address or on the website itself, such as "disasterreliefclaims.com", one of the websites utilized by Defendants in this scheme.

66.

Velawcity also operated a call center pursuant to these Marketing Service Agreements, and through this call center reached out to potential clients seeking to obtain signed contracts for MMA's benefit.

67.

Through this call center, Velawcity initiated telephone calls to individuals that submitted information to the websites set up by Velawcity, as well as to individuals whose information Velawcity obtained from other sources.

68.

On these phone calls, the non-lawyers at Velawcity would tell individuals that they were contacting them "on behalf of the Velawcity law firm located in Texas" or some similar variation of that statement.

69.

While on phone calls, Velawcity representatives caused an email to be sent to individuals and instructing the individuals to open the email while they were still on the phone.

70.

Such emails stated:

Thank you for your interest in the Hurricane / Storm Litigation. This email
has been sent by the Intake Team Member you are speaking with. Please
take a moment to review your agreement while you are on the call with us
so we can answer any questions and get started on your case.

Such emails also asked the recipient to click on a link in the email "to sign your Agreement."

71.

Velawcity representatives encouraged individuals to click on the link. When the link
was clicked, a screen emerged indicating "Your document is ready to sign!"

72.

This electronic correspondence asked the individual to follow three simple steps in order
to set up the signing mechanism for the agreement. The first step is to agree to sign with e-
signature. The next step in the process instructs the reader "Draw your signature" and "Draw
your initial."

73.

Once the individual clicks on the "Continue" button, the reader is provided with an
MMA Attorney Employment Contract with instructions to "Click Here to Begin Signing." At
no point in this process was anybody from MMA involved or identified.

74.

In fact, in at least one instance when the Velawcity representative was questioned, the
representative denied having any knowledge of MMA and reaffirmed that he was acting on
behalf of Velawcity.

75.

Individuals who did not sign this Agreement were then inundated with at least one email
a day from Velawcity stating that their potential claim would "expire" in "[x number] days"
unless they "act[ed] now" and signed the Agreement.

76.

These emails did not contain the word "ADVERTISEMENT" or give any other
indication that they were advertising material.

77.

Individuals also received a large number of follow-up text messages and phone calls from Velawcity, pressuring them to sign the Agreement.

78.

MMA, and its principals, knowingly compensated Velawcity for its performance of solicitation of employment for MMA's economic benefit in violation of Louisiana and Texas law.

79.

Through these various unlawful practices, MMA, and its principals, have either signed or purported to represent thousands of property owners in Louisiana.

80.

In situations where the insurer would not settle the claim with MMA, MMA filed suit on the property owner's behalf without an engagement letter or authorization from the property owner.

81.

While the exact number of these individuals that have been affected by these schemes is unknown at this point, in response to an Order issued by U.S. Magistrate Judge Michael B. North of the United States District Court for the Eastern District of Louisiana, MMA has identified at least nine (9) instances where MMA settled a claim for properties in the district where they represented Apex and not the named insured.

82.

MMA further identified 856 claims not currently in litigation related to Hurricane Ida where MMA has sent a letter of representation to an insurance company to advise that insurance company that MMA represents the insured when MMA actually had a retention agreement with Apex.

83.

These lists are likely not exhaustive, as Defendant Moseley stated in an interview four months ago that MMA represents approximately 15,000 clients in Louisiana who have hurricane

damage claims. "Federal Judge DEMOLISHES McClenny and Moseley over 1600 Insurance Claims", https://www.youtube.com/watch?v=uHHeC2I-o40.

### 84.

For example, MMA filed over 1,600 lawsuits in the United States District Court for the Western District of Louisiana over the span of two days pertaining to hurricane damage claims, a large number of which were likely obtained from these deceptive schemes employed by Defendants. *See* March 4, 2023 Memorandum Order Suspending MMA from Practice in the Western District of Louisiana, attached and incorporated by reference to this Petition as Exhibit 1; Transcript of October 20, 2022 hearing in front of U.S. District Court Judge James D. Cain, attached and incorporated by reference to this Petition as Exhibit 2; Transcript of December 13, 2022; earing in front of U.S. District Court Judge for the Western District of Louisiana James D. Cain, attached and incorporated by reference to this Petition as Exhibit 3.

### 85.

In hearings in one of those cases, MMA also represented to the Court that they had an "extensive pre-suit mediation program" where they settled "thousands" of claims before they filed the 1,600-plus lawsuits in the Western District. Exhibit 2.

### 86.

Defendants actively concealed the actions alleged in this Petition from the members of the Plaintiffs' Class, and it was not until October 2022 that these schemes, and the people affected by them, truly came to light.

*Court and State Action Against MMA*

### 87.

In October 2022, U.S. District Court Judge James D. Cain, Jr. of the United States District Court for the Western District of Louisiana issued a stay of over 1,400 Hurricane Laura and Hurricane Delta lawsuits filed by MMA based on a finding by the judge that a large portion of these filings were (1) made on behalf of plaintiffs that have already settled lawsuits; (2) were duplicate filings; (3) filed against insurers who did not issue a policy to the plaintiff; or (4) filings for damage to property that is outside the typical geographical area where reported damage was caused by Hurricanes Laura and Delta. Exhibit 2.

88.

One of the many practices of MMA over which Judge Cain expressed concern, in addition to the four outlined above, were the repeated efforts made by MMA to "mass mediate" a large number of these cases with the insurance companies. Exhibit 1.

89.

On February 17, 2023, the Louisiana Insurance Commissioner issued a Cease and Desist Order to MMA and its principals (the "LDI Order"). February 17, 2023 Cease and Desist Order, attached and incorporated by reference to this Petition as Exhibit 4.

90.

The LDI Order states that the Louisiana Department of Insurance "has evidence that [MMA and its principals] participated in a fraudulent scheme involving fraudulent insurance acts" relating to the contractual arrangement and actions of MMA and Apex. Exhibit 4.

91.

The LDI Order further declared the actions of MMA and Apex to be unfair trade practices under the Louisiana Insurance Code, specifically La. R.S. 22:1964(12) and (13). Exhibit 4.

92.

On March 2, 2023, the United States District Court for the Eastern District of Louisiana stayed over 600 Hurricane Ida cases filed by MMA pursuant to a recommendation from Chief Magistrate Judge Michael B. North. March 2, 2023 Order, attached and incorporated by reference to this Petition as Exhibit 5.

93.

Judge North's conclusion that these cases should be stayed was based on information that came to light in several hearings in front of Judge North involving the Apex Scheme detailed in Plaintiff's Petition. *See* Transcript of February 1, 2023 Hearing, attached and incorporated by reference to this Petition as Exhibit 6; Transcript of February 22, 2023 Hearing, attached and incorporated by reference to this Petition as Exhibit 7.

94.

MMA was suspended from practicing in the Western District of Louisiana on March 4,

2023, and one of the attorneys for MMA in Louisiana, H. William Huye, received an interim

suspension from the practice of law shortly thereafter from the state Supreme Court.

## CLASS ACTION ALLEGATIONS

95.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the

preceding paragraphs of this Petition.

96.

Plaintiff brings this matter as a class action against Defendants on the issue of injunctive

relief, liability, and damages.

97.

The class is defined as follows:

All persons who were solicited, damaged, or otherwise adversely affected by the
conduct of the Defendants that violates La. Rev. Stat. Ann. § 37:213, *et seq.*, the
Louisiana Rules of Professional Conduct, or other law in connection with
potential storm or other hurricane damage claims from August 27, 2020 to
present.

98.

Plaintiff reserves the right, with leave of Court if required, to amend the Class definition

if further investigation and discovery indicate that the Class definition should be narrowed,

expanded, or otherwise modified. Excluded from the Class of Plaintiffs are governmental

entities; the Defendants; any entity in which Defendants have a controlling interest, their

affiliates, legal representatives, co-conspirators, successors, subsidiaries, and assigns. Also

excluded from the Class is any judge, justice, or judicial officer presiding over this matter and

the members of their immediate families and judicial staff.

99.

Plaintiff and all those similarly situated are entitled to have this cause of action

maintained as a class action pursuant to La. C.C.P. art. 591.

100.

Defendants' acts and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class and any subclasses the Court might find to be appropriate.

101.

All members of the Class and any subclasses were and are similarly affected by the Defendants' acts and omissions, and the relief sought in this Complaint is for the benefit of Plaintiffs and members of the Class and any subclasses.

· 102.

Based on the thousands of individuals who appear to be harmed by these schemes perpetrated by MMA, its principals, and the other co-conspirator Defendants, it is apparent that the number of plaintiffs in both the Class and any subclass(es) is so large as to make joinder impractical, if not impossible.

103.

Questions of law and fact common to the Plaintiff Class and any subclasses exist that predominate over questions affecting only individual members, including, but not limited to the following:

   a.  Whether the Velawcity Scheme and Apex Scheme constitute the unauthorized practice of law;

   b.  Whether MMA instituted suits and/or made claims to insurers that they knew they were not authorized to pursue;

   c.  The extent that the Defendants conspired together to engage in the improper solicitation of employment for MMA's economic benefit;

   d.  The amounts paid to Velawcity and Apex by MMA in furtherance of these schemes;

   e.  The extent to which the actions of Velawcity and Apex were directed by MMA;

104.

The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by

Defendants, and the relief sought within the Class and any subclasses is common to the members of each.

105.

Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclasses.

106.

Class representatives will be formally designated consistent with scheduling orders handed down by the Court.

107.

Plaintiff has retained counsel who are competent and experienced in class action litigation.

108.

Certification of this matter as a class action is appropriate under Louisiana Code of Civil Procedure Article 591 because the questions of law or fact common to the respective members of the Class and any subclasses predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

109.

Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests due to the cost of litigation through individual lawsuits.

110.

This action is properly maintainable as a class action under Art. 591(B)(1)(a) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants. Additionally, this action is properly maintainable as a class action under Art. 591(B)(1)(b) because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications.

Page 18 of 33

111.

This action is properly maintainable as a class action under Art. 591(B)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

112.

This action is properly maintainable as a class action under Art. 591(B)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of the asserted claims in this Complaint, individual Plaintiffs lack the financial resources to vigorously prosecute separate lawsuits against these corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' practices. There does not appear to be any difficulties in managing this class action.

113.

A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

114.

The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## CAUSES OF ACTION

### UNAUTHORIZED PRACTICE OF LAW

115.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Petition.

116.

Plaintiff brings this cause of action against Defendants for the unauthorized practice of law pursuant to La. Rev. Stat. Ann. § 37:213.1.

117.

Defendants' actions alleged in the preceding paragraphs of this Petition amount to the unauthorized practice of law in violation of La. Rev. Stat. Ann. § 37:213, as follows:

a. Defendant Velawcity engaged in the unauthorized practice of law by rendering or furnishing legal services or advice without first been duly and regularly licensed and admitted to practice law by the supreme court of this state, in violation of La. Rev. Stat. Ann. § 37:213 (A)(4);

b. Defendant Apex engaged in the unauthorized practice of law by rendering or furnishing legal services or advice without first been duly and regularly licensed and admitted to practice law by the supreme court of this state in violation of La. Rev. Stat. Ann. § 37:213(A)(4);

c. Defendant MMA engaged in the unauthorized practice of law by assisting Defendants Velawcity and Apex in the unauthorized practice of law in violation of La. Rev. Stat. Ann. § 37:213(D);

d. Defendant McClenny engaged in the unauthorized practice of law by assisting Defendants Velawcity and Apex in the unauthorized practice of law in violation of La. Rev. Stat. Ann. § 37:213(D);

e. Defendant Moseley engaged in the unauthorized practice of law by assisting Defendants Velawcity and Apex in the unauthorized practice of law in violation of La. Rev. Stat. Ann. § 37:213(D);

f. Defendant Huye engaged in the unauthorized practice of law by assisting Defendants Velawcity and Apex in the unauthorized practice of law in violation of La. Rev. Stat. Ann. § 37:213(D);

118.

Defendants' actions relating to the unauthorized practice of law caused Plaintiff and Plaintiffs' Class to suffer damages, and Plaintiff is entitled to recover for said damages including

but not limited to actual damages, delay damages, general and specific damages, and other damages that may be appropriate, as well as reasonable costs and attorney's fees.

## LIABILITY UNDER GENERAL TORT LAW

### 119.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Petition.

### 120.

Defendants' actions and inactions resulted in multiple individual violations of Louisiana law, including but not limited to La. C.C. art. 2315, La. R.S. 22:1924(A)(1)(a), and (2)(a) and (c) as defined by La. R.S. 22:1923; and La. R.S. 22:1964 (12) and (13).

### 121.

Defendant MMA, McClenny, Moseley, and Huye's actions also resulted in multiple individual violations of the Louisiana Rules of Professional Conduct, including but not limited to Rule 7.4, Rule 7.6, and Rule 7.9.

### 122.

Although the violations apply to each plaintiff as an "individual" violation in each instance, each violation, along with the nature and manner of the incredible pattern and practice of Defendants' violations of Louisiana tort law, were common among the plaintiff and putative plaintiffs; and the claims of the plaintiff and class representative (to be identified as required), are typical of those of the putative plaintiffs.

### 123.

The actions of Defendants set out above in this petition were grossly negligent and constitute an extreme departure from ordinary care and willful, wanton, or reckless disregard for the rights of others, entitling the Plaintiff Class to all damages and remedies under Louisiana's general tort law.

### 124.

Other acts of fault, breach of duty, negligence, gross negligence, conversion, intentional tort, and willful misconduct that are developed during discovery and further investigation, and

which are in violation of the standard of care owed by Defendants to Plaintiff and similarly situated persons, shall be shown at the trial of this cause.

## TEXAS DECEPTIVE TRADE PRACTICES ACT

### 125.

Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Petition.

### 126.

Plaintiff, and those similarly situated, now seek a full and complete rescission of all contracts between them and Defendants, and any of them, and especially any indebtedness or alleged indebtedness as a result of the deceptive trade practices of MMA, its principals, Velawcity, and Apex. Specifically, Defendants have committed numerous prohibited actions in the Texas Deceptive Trade Practices Act ("Texas DTPA"), Tex. Bus. & Com. Code §17.46(b), including but not limited to the following:

    a.  Passing off services as those of another in violation of Texas DTPA §17.46(b)(1)

    b.  Causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of services in violation of Texas DTPA §17.46(b)(2);

    c.  Causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another in violation of Texas DTPA §17.46(b)(3);

    d.  Using deceptive representations or designations of geographic origin in connection with services in violation of Texas DTPA §17.46(b)(4);

    e.  Representing that services have sponsorship, approval, characteristics, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not in violation of Texas DTPA §17.46(b)(5);

    f.  Advertising services with intent not to sell them as advertised in violation of Texas DTPA §17.46(b)(9);

    g.  Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law in violation of Texas DTPA §17.46(b)(12);

h. Knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service in violation of Texas DTPA §17.46(b)(13);

i. Misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction in violation of Texas DTPA §17.46(b)(14); and

j. Failing to disclose information concerning services which was known at the time of the transaction with the intent to induce members of Plaintiff Class into a transaction that Plaintiff Class members would not have entered had the information been disclosed in violation of Texas DTPA §17.46(b)(24).

127.

Additionally, pursuant to Tex. Bus. & Com. Code Ann. §17.50(d), Plaintiff, and those similarly situated, seek a judgment awarding them their reasonable and necessary attorney's fees incurred in prosecuting this claim.

128.

Defendants' actions caused actual damages to Plaintiff Class including not limited to mental anguish, increased indebtedness, delay, and lost investment opportunities. Plaintiff seeks an award of those damages in this proceeding.

129.

Plaintiff seeks money damages, specifically including but by no means limited to, treble damages as provided by Tex. Bus. & Com. Code Ann. § 17.50(b)(1).

## REQUEST FOR TEMPORARY RESTRAINING ORDER

130.

Plaintiff seeks a temporary restraining order as follows:

a. That Defendants, all of their agents, assigns, and/or attorneys, or other persons acting or claiming to act on their behalf, be and are hereby temporarily restrained, enjoined, and prohibited from disposing of any records, documents, communications, including text messages and emails, and any other evidence related to the allegations in this Petition, or property and other monies of the Plaintiff Class in Defendants' actual or constructive possession;

b.  That Defendants, all of their agents, assigns, and/or attorneys, or other persons acting

or claiming to act on their behalf, be and are hereby restrained, enjoined, and

prohibited from engaging in the following activities pertaining to potential or actual

hurricane or storm damage claims:

1.  Filing or continuing to prosecute any lawsuit or claim obtained in connection
with any solicitation done by Velawcity;

2.  Filing or continuing to prosecute any lawsuit or claim obtained in connection
with any solicitation done by Apex or any other roofing or construction
contractor;

3.  Filing or continuing to prosecute any lawsuit or claim where McClenny,
Moseley, and Associates does not have a signed engagement letter with the
named insured;

4.  Operating any website designed to gather potential clients for McClenny,
Moseley, and Associates that does not (1) contain any reference to McClenny,
Moseley, and Associates on the front page of the website itself, and (2) does
not contain a statement that the website is an advertisement for attorney
services;

5.  Contacting potential clients in-person on behalf of McClenny, Moseley, and
Associates; and

6.  Contacting potential clients via telephone, mail, email, text message, or other
electronic means without providing a clear indication at the beginning of the
communication that such communication is attorney advertisement.

c.  In order to preserve the status quo, Defendants are ordered to not deplete or expend

any fees earned, costs expended, or other monies obtained with respect to any clients

or prospective clients solicited or purportedly represented by any of the Defendants

inconsistent with La. Rev. Stat. Ann. § 37:213.1 or the Louisiana Rules of

Professional Conduct.

131.

La. Rev. Stat. Ann. § 37:213.1(C) specifically authorizes a Court to issue injunctive relief to prevent an actor from engaging in the unauthorized practice of law.

132.

Because the Court is specifically authorized to issue an injunction under this statute, and because the conduct sought to be enjoined constitutes a direct violation of La. Rev. Stat. Ann. § 37:213, a prohibitory law, Plaintiff is entitled to injunctive relief without the requisite showing of irreparable injury. *See Justsich v. Jenkins*, 99-0076 (La. 10/19/99), 749 So.2d 597, 599-600.

134.

Plaintiff has made a prima facie showing that Defendant's conduct is reprobated by law, and accordingly Plaintiff is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists. *See Ouachita Parish Police Jury v. American Waste & Pollution Control*, 606 So.2d 1341 (La. App. 2 Cir.), writ denied, 609 So.2d 234 (La. 1992), *cert. denied*, 508 U.S. 9091 1 13 S.Ct. 2339, 124 L.Ed.2d 249 (1993).

135.

Even if required to show irreparable injury, the conduct of the Defendants has clearly caused irreparable injury.

136.

The allegations in this Petition evidence a pattern of deceitful conduct by Defendants that has already caused significant harm to the putative class members represented by Plaintiff. In addition to monies owed to the class members that have been improperly obtained by Defendants, the Defendants' conduct in perpetrating these schemes has prevented class members from making repairs to their homes, causing them anxiety and other emotional distress that cannot be adequately compensated by money, and may have even led to members of the class losing their causes of action through prescription. Defendants' conduct has also led to members of the class experiencing higher premiums from their insurance companies or being dropped by their insurance companies altogether.

137.

While some Louisiana courts have taken action by suspending the licenses of the MMA attorneys to practice in Louisiana, there is nothing to stop MMA from continuing their schemes

in other states like Texas and Florida. Likewise, though the Louisiana Department of Insurance issued a cease and desist to MMA and Apex, there is nothing stopping Apex and Velawcity from continuing to perpetrate these schemes elsewhere and causing further irreparable harm. In the face of the backlash of discipline and criticism, MMA was unperturbed, maintaining its commitment to its goal to "revolutionize" the legal profession with its mass "representation" of storm victims – including continuing MMA's attempts to mediate thousands of cases a day with its staff of less than 10 attorneys. "Federal Judge DEMOLISHES McClenny and Moseley over 1600 Insurance Claims", https://www.youtube.com/watch?v=uHHeC2I-o40.

138.

Further, providing these Defendants with notice when they have already demonstrated a careless disregard of the law, would give them an opportunity to destroy or otherwise conceal critical evidence to this class action proceeding, thus potentially depriving Plaintiffs of an opportunity to recover, or making it more difficult to make a claim for the property damage sustained with their insurance company. Accordingly, Plaintiff asserts that notice should not be required prior to the issuance of a temporary restraining order in this matter due to the immediate threat of irreparable harm.

139.

Plaintiff and the putative class members risk irreparable harm should this Court not grant injunctive relief. The Defendants will incur little harm in requiring them to stop their actions relating to the schemes alleged in this Petition and preserve evidence and any monies allegedly unlawfully obtained.

140.

Consequently, the balance weighs heavily in favor of the Plaintiff, the putative class, and the public at large. The circumstances before the court present violations of statutory and the general tort laws of Louisiana such that injunctive relief should be granted immediately without notice or hearing, and with no – or only minimal – bond.

141.

Because members of the putative class will also suffer harm absent the granting of the injunctive relief sought by the plaintiff and the putative class, granting of the injunctive relief would serve the public interest.

142.

Plaintiff and the putative class are entitled to injunctive relief as outlined in the preceding paragraphs. The undersigned counsel should be recognized as class counsel and allowed to proceed to seek injunctive and other appropriate relief on behalf of the class defined above.

143.

Plaintiff requests that this honorable Court grant an order allowing Plaintiff to present a portion of its case through supporting affidavits submitted to the Court at the hearing on the preliminary injunction, in accordance with La. C.C.P. art. 3609.

**JURY DEMAND**

144.

Plaintiff demands trial by jury on all issues subject to trial by a trier of fact.

**PRAYER**

WHEREFORE Plaintiff, Louis Carter, III, individually and for all others similarly situated, pray for relief pursuant to each cause of action set forth in this Petition as follows:

a. For an order certifying that the action may be maintained as a class action, certifying the individuals formally designated (consistent with scheduling orders handed down by the Court) as representative of the Class, and designating their counsel as counsel for the Class;

b. For a temporary restraining order as follows:

   1. That Defendants, all of their agents, assigns, and/or attorneys, or other persons acting or claiming to act on their behalf, be and are hereby temporarily restrained, enjoined, and prohibited from disposing of any records, documents, communications, including text messages and emails, and any other evidence related to the allegations in this Petition, or property and other monies of the Plaintiff Class in Defendants' actual or constructive possession;

2. That Defendants, all of their agents, assigns, and/or attorneys, or other persons
acting or claiming to act on their behalf, be and are hereby restrained, enjoined,
and prohibited from engaging in the following activities pertaining to potential or
actual hurricane or storm damage claims:

   i. Filing or continuing to prosecute any lawsuit or claim obtained in
   connection with any solicitation done by Velawcity;

   ii. Filing or continuing to prosecute any lawsuit or claim obtained in
   connection with any solicitation done by Apex or any other roofing or
   construction contractor;

   iii. Filing or continuing to prosecute any lawsuit or claim where McClenny,
   Moseley, and Associates does not have a signed engagement letter with
   the named insured;

   iv. Operating any website designed to gather potential clients for McClenny,
   Moseley, and Associates that does not (1) contain any reference to
   McClenny, Moseley, and Associates on the front page of the website
   itself, and (2) does not contain a statement that the website is an
   advertisement for attorney services;

   v. Contacting potential clients in-person on behalf of McClenny, Moseley,
   and Associates; and

   vi. Contacting potential clients via telephone, mail, email, text message, or
   other electronic means without providing a clear indication at the
   beginning of the communication that such communication is attorney
   advertisement.

3. In order to preserve the status quo, Defendants are ordered to not deplete or
expend any fees earned, costs expended, or other monies obtained with respect to
any clients or prospective clients solicited or purportedly represented by any of
the Defendants inconsistent with La. Rev. Stat. Ann. § 37:213.1 or the Louisiana
Rules of Professional Conduct.

c. After issuance of the Temporary Restraining Order, for a timely hearing where Defendants are required to show cause as to whether a preliminary injunction should be issued and maintained until the trial of a permanent injunction.

d. After a hearing, for a preliminary injunction to be issued, granting injunctive relief to be maintained until a trial of a permanent injunction as follows:

    1. That Defendants, all of their agents, assigns, and/or attorneys, or other persons acting or claiming to act on their behalf, be and are hereby restrained, enjoined, and prohibited from engaging in the following activities pertaining to potential or actual hurricane or storm damage claims:

        i. Filing or continuing to prosecute any lawsuit or claim obtained in connection with any solicitation done by Velawcity;

        ii. Filing or continuing to prosecute any lawsuit or claim obtained in connection with any solicitation done by Apex or any other roofing or construction contractor;

        iii. Filing or continuing to prosecute any lawsuit or claim where McClenny, Moseley, and Associates does not have a signed engagement letter with the named insured;

        iv. Operating any website designed to gather potential clients for McClenny, Moseley, and Associates that does not (1) contain any reference to McClenny, Moseley, and Associates on the front page of the website itself, and (2) does not contain a statement that the website is an advertisement for attorney services;

        v. Contacting potential clients in-person on behalf of McClenny, Moseley, and Associates; and

        vi. Contacting potential clients via telephone, mail, email, text message, or other electronic means without providing a clear indication at the beginning of the communication that such communication is attorney advertisement.

2. That Defendants, all of their agents, assigns, and/or attorneys, or other persons acting or claiming to act on their behalf, be and are hereby restrained, enjoined, and prohibited from disposing of any records, documents, communications, including text messages and emails, and any other evidence related to the allegations in this Petition, or property and other monies of the Plaintiff Class in Defendants' actual or constructive possession;

3. That Defendants produce to Counsel for Plaintiff the following documents:

   i. A list of any and all persons who received an in-person, electronic, telephonic, or another form of communication from any Defendant pertaining to potential storm or hurricane damage claims from August 27, 2020 to present;

   ii. A spreadsheet setting forth every pending or settled Hurricane Laura, Hurricane Delta, Hurricane Zeta, Hurricane Ida, or other storm damage lawsuit from 2020 to present in which MMA is or has ever been counsel of record in any Louisiana state or federal court that includes Plaintiff(s)' name(s), address, telephone number and email address; the defendant/insurance carrier; and the Policy number;

   iii. A list of lawsuits that MMA has filed on behalf of Plaintiffs in Hurricane Laura, Hurricane Delta, Hurricane Zeta, Hurricane Ida, or other storm damage cases from 2020 to present in which they do not have a contingent fee or other payment contract with the named Plaintiff(s) or the named insured(s) on the insurance policy, including the case name, docket number, home address of the insured(s) and contact information for the insured;

   iv. A list of lawsuits that MMA has filed in Hurricane Laura, Hurricane Delta, Hurricane Zeta, Hurricane Ida, or other storm damage cases from 2020 to present in which they actually represent Apex or any other roofing or construction company – as opposed to or in addition to the named plaintiff(s) – including the case name, docket number, insured address and

insured contact information if available, as well as the name of the respective roofing or construction company in each case;

v. A list of claims that MMA has settled for properties in Louisiana in which they represented Apex or any other roofing or construction company – as opposed to the named insured – including the insured address and insured contact information if available, as well as the name of the respective roofing or construction company in each claim;

vi. A list of cases/claims not yet in litigation related to Hurricane Laura, Hurricane Delta, Hurricane Zeta, Hurricane Ida, or other storm damage case from 2020 to present in which MMA has sent a Letter of Representation to any insurance company advising that company that MMA represents homeowners/named insureds when it actually/also has a retention agreement with Apex Roofing and Restoration, L.L.C. ("Apex") or some other roofing or construction company.

4. In order to preserve the status quo, and assure that funds shall not be depleted, Defendants are ordered to deposit into the court registry any fees earned with respect to any clients or prospective clients solicited or purportedly represented by any of the Defendants inconsistent with La. Rev. Stat. Ann. § 37:213.1 or the Louisiana Rules of Professional Conduct, and producing a listing or spreadsheet identifying each payment or fee claimed, the putative class member attributable to that fee or payment, the date the monies were transferred or received, and the payor.

e. For issuance of a permanent injunction granting the relief prayed for in the preliminary injunction on a permanent basis;

f. For an award of all appropriate damages consistent with this class action, including all available punitive damages and treble damages as provided by Tex. Bus. & Com. Code Ann. § 17.50(b)(1), and any other punitive or other damages or relief available under these circumstances;

g.   For reasonable attorneys fees based on the damages sustained by Plaintiff Class, and the trebling of those amounts pursuant to the Texas Deceptive Trade Practices Act;

h.   For disgorgement of any and all funds improperly paid by or to any Defendant as a result of the deceptive and unlawful actions alleged in this Petition;

i.   For an order appointing Robert E. Couhig, Jr., Donald C. Massey, Jonathan P. Lemann, and R. Tate Martin II, of the law firm Couhig Partners, LLC as preliminary class counsel for the putative class as defined in this Petition;

j.   For an award of all appropriate damages consistent with this class action, including all available punitive damages or other damages or relief available under these circumstances;

k.   For reasonable attorneys fees;

l.   For an award of costs and all expenses associated with this litigation; and

m.   For any other relief the Court might deem just, appropriate, or proper.

Respectfully Submitted:

_signature_

**Robert E. Couhig, Jr. (#4439)**
**Donald C. Massey (#14177)**
**Jonathan P. Lemann (#26380)**
**Jason A. Cavignac (#27990)**
**Robert. E. Couhig, III (#29811)**
**Blair C. Constant (#33071)**
**R. Tate Martin II (#38045)**

**COUHIG PARTNERS, LLC**
3250 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
(504) 588-1288
(504) 588-9750 *fax*

and

**Daniel Edwards (#22698)**
PO Box 456
Hammond, LA 70404
985-517-0909
danieledwardsatty@gmail.com

*Attorneys for Plaintiffs*

**PLEASE SERVE:**

**McClenny Moseley & Associates, PLLC**
through its registered agent for service in Louisiana,
H. William Huye
1820 St. Charles Ave.,
New Orleans, LA 70130

**James McClenny**
380 Ridge Lake Scenic Dr.
Montgomery, TX 77316

**John Zachary Moseley**
1214 W Dallas St
Houston, TX 77019

**H. William Huye**
1820 St. Charles Ave.,
New Orleans, LA 70130

**Apex Roofing and Restoration, LLC**
through its registered agent for service in Louisiana,
Erin Shields
One Galleria Blvd, Suite 1900,
Metairie, LA 70001

**Please Prepare Citation and a Certified Copy of the Petition in accordance with the Louisiana Long Arm Statute, LA R.S. 12:3201, et seq., for service upon:**

**Tort Network, LLC**
Through its registered agent for service of process in Arizona,
MPBG Service, LLC
Attn: Taylor Gustafson
1850 N Central Avenue Suite 1600,
Phoenix, AZ 85004

Tangipahoa Parish Clerk of Court  20230000821
Filed Mar 13, 2023 10:45 AM          D
Debi McCoy
Deputy Clerk of Court
FAX Received Mar 13, 2023

**21ST JUDICIAL DISTRICT COURT FOR THE PARISH OF TANGIPAHOA**

**STATE OF LOUISIANA**

NO.

DIVISION "    "

**LOUIS CARTER, III, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED**

**VERSUS**

**MCCLENNY, MOSELEY & ASSOCIATES, PLLC; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; H. WILLIAM HUYE; TORT NETWORK, LLC; and APEX ROOFING AND RESTORATION, LLC**

FILED:_____        _____
                                        **DEPUTY CLERK**

## TEMPORARY RESTRAINING ORDER AND RULE TO SHOW CAUSE ON INJUNCTIVE RELIEF

The request for injunctive relief contained in the original Petition considered, and the Court being satisfied from the specific facts alleged in support, that Plaintiff and those similarly situated have made a prima facie showing that Defendants' conduct has violated La. Rev. Stat. Ann. § 37:213, and/or that they will suffer immediate and irreparable harm, injury, loss, or damage before notice can be served and a hearing had, and therefore temporarily orders as follows:

**IT IS HEREBY ORDERED** that a Temporary Restraining Order issue immediately against Defendants MCCLENNY, MOSELEY & ASSOCIATES, PLLC; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; H. WILLIAM HUYE; TORT NETWORK, LLC; and APEX ROOFING AND RESTORATION, LLC as follows:

1. That Defendants, all of their agents, assigns, and/or attorneys, or other persons acting or claiming to act on their behalf, be and are hereby temporarily restrained, enjoined, and prohibited from disposing of any records, documents, communications, including text messages and emails, and any other evidence related to the allegations in this Petition, or property and other monies of the Plaintiff Class in Defendants' actual or constructive possession;

2. That Defendants, all of their agents, assigns, and/or attorneys, or other persons acting or claiming to act on their behalf, be and are hereby restrained, enjoined, and prohibited from engaging in the following activities pertaining to potential or actual hurricane or storm damage claims:

Page 1 of 3

i.   Filing or continuing to prosecute any lawsuit or claim obtained in connection with any solicitation done by Velawcity;

ii.   Filing or continuing to prosecute any lawsuit or claim obtained in connection with any solicitation done by Apex or any other roofing or construction contractor;

iii.   Filing or continuing to prosecute any lawsuit or claim where McClenny, Moseley, and Associates does not have a signed engagement letter with the named insured;

iv.   Operating any website designed to gather potential clients for McClenny, Moseley, and Associates that does not (1) contain any reference to McClenny, Moseley, and Associates on the front page of the website itself, and (2) does not contain a statement that the website is an advertisement for attorney services;

v.   Contacting potential clients in-person on behalf of McClenny, Moseley, and Associates; and

vi.   Contacting potential clients via telephone, mail, email, text message, or other electronic means without providing a clear indication at the beginning of the communication that such communication is attorney advertisement.

3.   In order to preserve the status quo, Defendants are ordered to not deplete or expend any fees earned, costs expended, or other monies obtained with respect to any clients or prospective clients solicited or purportedly represented by any of the Defendants inconsistent with La. Rev. Stat. Ann. § 37:213.1 or the Louisiana Rules of Professional Conduct.

This Order is issued without hearing and/or notice due to the exigent circumstances and the matters alleged.

   **IT IS FURTHER ORDERED** that the above Order shall expire on _____ _____, 2023 at midnight unless further extended by order of this Court;

   **IT IS FURTHER ORDERED** that defendants appear and show cause on the _____ day of _____, 2023, at ____:____ _.m., why a preliminary and or permanent injunction in the form and substance of the Temporary Restraining Order should not issue.

**IT IS FURTHER ORDERED** that Plaintiff shall post bond of $_____/that no

bond is required as this matter involves the violation of statutory law.

Amite, Louisiana, this \_\_\_ day of March, 2023, at _____ a.m./p.m.


_____
**JUDGE**

**PLEASE SERVE:**

**McClenny Moseley & Associates, PLLC**
through its registered agent for service in Louisiana,
H. William Huye
1820 St. Charles Ave.,
New Orleans, LA 70130

**James McClenny**
380 Ridge Lake Scenic Dr.
Montgomery, TX 77316

**John Zachary Moseley**
1214 W Dallas St
Houston, TX 77019

**H. William Huye**
1820 St. Charles Ave.,
New Orleans, LA 70130

**Apex Roofing and Restoration, LLC**
through its registered agent for service in Louisiana,
Erin Shields
One Galleria Blvd, Suite 1900,
Metairie, LA 70001

**Please Prepare a Certified Copy of this Temporary Restraining Order for service upon:**

**Tort Network, LLC**
Through its registered agent for service of process in Arizona,
MPBG Service, LLC
Attn: Taylor Gustafson
1850 N Central Avenue Suite 1600,
Phoenix, AZ 85004

Tangipahoa Parish Clerk of Court  20230000821
Filed Mar 13, 2023 10:45 AM          D
Debi McCoy
Deputy Clerk of Court
FAX Received Mar 13, 2023

1ST JUDICIAL DISTRICT COURT FOR THE PARISH OF TANGIPAHOA

STATE OF LOUISIANA

NO.                                                           DIVISION "

LOUIS CARTER, III, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED

VERSUS

MCCLENNY, MOSELEY & ASSOCIATES, PLLC; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; H. WILLIAM HUYE; TORT NETWORK, LLC; and APEX ROOFING AND RESTORATION, LLC

FILED:_____        _____
                                                              DEPUTY CLERK

### MOTION FOR PRELIMINARY APPOINTMENT AS CLASS COUNSEL

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Louis Carter, III, on his own behalf and on behalf of the proposed class of similarly situated persons, who respectfully moves this Court for a preliminary appointment as class counsel for the putative class as follows:

1.

LA C.C.P. art. 592(E) gives the trial court the discretion to determine the course of proceedings in a class action and make orders dealing with procedural matters, including but not limited to orders providing for the duties of counsel in class actions. Louisiana Code of Civil Procedure art. 592.

2.

The undersigned counsel should be preliminarily recognized as class counsel and allowed to proceed to seek injunctive and other appropriate relief on behalf of the class in the time leading up to the class certification hearing, at which point the official designation of class counsel will be made if this Court finds certification is appropriate.

3.

As proponent of the class, Plaintiff is required to move for class certification within ninety (90) days after service of the petition on all adverse parties. Louisiana Code of Civil Procedure art. 592.

1

4.

At the hearing on class certification, this Court will officially designate the attorneys who are to serve as class counsel for the certified class, but this preliminary appointment allows undersigned counsel to protect the interests of the putative class in the meantime.

WHEREFORE, Plaintiff, on his own behalf and on behalf of the proposed class of similarly situated persons, pray that this Court appoint Robert E. Couhig, Jr., Donald C. Massey, Jonathan P. Lemann, and R. Tate Martin II, of the law firm Couhig Partners, LLC as preliminary class counsel.

Respectfully Submitted:

_____

**Robert E. Couhig, Jr. (#4439)**
**Donald C. Massey (#14177)**
**Jonathan P. Lemann (#26380)**
**Jason A. Cavignac (#27990)**
**Robert. E. Couhig, III (#29811)**
**Blair C. Constant (#33071)**
**R. Tate Martin II (#38045)**

**COUHIG PARTNERS, LLC**
3250 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
(504) 588-1288
(504) 588-9750 *fax*

and

**Daniel Edwards (#22698)**
PO Box 456
Hammond, LA 70404
985-517-0909
danieledwardsatty@gmail.com

*Attorneys for Plaintiffs*

**PLEASE SERVE:**

**McClenny Moseley & Associates, PLLC**
through its registered agent for service in Louisiana,
H. William Huye
1820 St. Charles Ave.,
New Orleans, LA 70130

2

James McClenny
380 Ridge Lake Scenic Dr.
Montgomery, TX 77316

John Zachary Moseley
1214 W Dallas St
Houston, TX 77019

H. William Huye
1820 St. Charles Ave.,
New Orleans, LA 70130

Apex Roofing and Restoration, LLC
through its registered agent for service in Louisiana,
Erin Shields
One Galleria Blvd, Suite 1900,
Metairie, LA 70001

**Please Prepare Citation and a Certified Copy of the Complaint in accordance with the
Louisiana Long Arm Statute, LA R.S. 12:3201, et seq., for service upon:**

Tort Network, LLC
Through its registered agent for service of process in Arizona,
MPBG Service, LLC
Attn: Taylor Gustafson
1850 N Central Avenue Suite 1600,
Phoenix, AZ 85004

3

```
Tangipahoa Parish Clerk of Court  20230000821
       Filed Mar 13, 2023 10:45 AM         D
                 Debi McCoy
            Deputy Clerk of Court
         FAX Received Mar 13, 2023
```

## 21ST JUDICIAL DISTRICT COURT FOR THE PARISH OF TANGIPAHOA

### STATE OF LOUISIANA

NO. _____                              DIVISION "      "

## LOUIS CARTER, III, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED

### VERSUS

## MCCLENNY, MOSELEY & ASSOCIATES, PLLC; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; H. WILLIAM HUYE; TORT NETWORK, LLC; and APEX ROOFING AND RESTORATION, LLC

FILED:_____        _____
                                              DEPUTY CLERK


### ORDER

Considering the Motion for Preliminary Appointment as Class Counsel, and finding that the bests interests of the putative class would be served by a preliminary appointment of class counsel to represent their interests and pursue injunctive and other relief on their behalf:

**IT IS HEREBY ORDERED** that Couhig Partners, LLC and the following attorneys are PRELIMINARILY APPOINTED as class counsel, with notice to be given as follows:

**COUHIG PARTNERS, LLC**
Robert E. Couhig, Jr. (#4439)
Donald C. Massey (#14177)
Jonathan P. Lemann (#26380)
R. Tate Martin II (#38045)
3250 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
(504) 588-1288
(504) 588-9750 *fax*

This preliminary appointment shall be effective until such time as this Court formally designates class counsel after a class certification hearing, should the Court find that class certification is appropriate.

Amite, Louisiana, this ___ day of March, 2023, at _____ a.m./p.m.


_____
                    JUDGE

**PLEASE SERVE:**

**McClenny Moseley & Associates, PLLC**
through its registered agent for service in Louisiana,
H. William Huye
1820 St. Charles Ave.,
New Orleans, LA 70130

**James McClenny**
380 Ridge Lake Scenic Dr.
Montgomery, TX 77316

**John Zachary Moseley**
1214 W Dallas St
Houston, TX 77019

**H. William Huye**
1820 St. Charles Ave.,
New Orleans, LA 70130

**Apex Roofing and Restoration, LLC**
through its registered agent for service in Louisiana,
Erin Shields
One Galleria Blvd, Suite 1900,
Metairie, LA 70001

**Please Prepare a Certified Copy of this Order for service upon:**

**Tort Network, LLC**
Through its registered agent for service of process in Arizona,
MPBG Service, LLC
Attn: Taylor Gustafson
1850 N Central Avenue Suite 1600,
Phoenix, AZ 85004

Tangipahoa Parish Clerk of Court 20230000821
Filed Mar 13, 2023 10:45 AM          D
Debi McCoy
Deputy Clerk of Court
FAX Received Mar 13, 2023

**21ST JUDICIAL DISTRICT COURT FOR THE PARISH OF TANGIPAHOA**

**STATE OF LOUISIANA**

NO.                                                 DIVISION "     "

**LOUIS CARTER, III, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED**

**VERSUS**

**MCCLENNY, MOSELEY & ASSOCIATES, PLLC; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; H. WILLIAM HUYE; TORT NETWORK, LLC; and APEX ROOFING AND RESTORATION, LLC**

FILED:_____        _____
                                                 DEPUTY CLERK

<u>**AFFIDAVIT**</u>

STATE OF LOUISIANA

PARISH OF _Tangipahoa_

BEFORE ME, Notary Public, came and appeared:

LOUIS CARTER, III

who is 47 years of age and of sound mind, after being duly sworn, stated as follows:

1. He has personal knowledge of the matters set forth in this Affidavit, and if called to testify, could and would competently testify to them.

2. He is the owner of a home located at 14146 Happywoods Drive, Hammond, LA.

3. The roof of his home sustained damage in a storm that occurred on December 6, 2021.

4. The damage was to the back portion of his roof and was not substantial, so after some time passed after the storm, he got up on the roof and patched some areas that were damaged.

5. Sometime thereafter, a man knocked on his door stating that he was from Apex Roofing and Restoration ("Apex") and asking him if he could take a look at the roof.

6. The Apex representative also asked him if he had filed a claim with his insurance company and if he had talked to an adjuster.

7. He told the Apex representative that he was "waiting for the dust to settle" and then he planned to contact the insurance company.

8.  The Apex representative told him that if he used Apex to make the repairs to the roof, he could just pay Apex a $500 deductible instead of the 5% deductible that he would have to pay to the insurance company.

9.  The Apex representative then asked if he could take a look at Affiant's roof to assess the damage, to which Affiant agreed.

10. The Apex representative gave him a document to sign that he said gave the representative permission to get on the roof.

11. After the Apex representative finished inspecting the roof, he told Affiant that Affiant had a lot of damage to his roof.

12. This statement surprised Affiant, as Affiant had been up there previously when Affiant was patching the roof and did not think the damage was too bad, but Affiant believed the Apex representative to be more knowledgeable than himself on the subject of roof damage.

13. The Apex representative did not give Affiant an estimate on the cost of repairs to the roof.

14. Affiant asked the Apex representative how Apex benefitted from the arrangement the representative was discussing with Affiant relating to the payment of the deductible to Apex instead of paying the deductible on his insurance policy to the insurer.

15. The Apex representative told Affiant that if Affiant went through his insurance company, he would still need a roofer, but by signing up with Apex, it would help expedite the process.

16. The Apex representative then had Affiant sign an "assignment of benefits" ("AOB"), which the Apex representative told him would allow Apex to reach out to his insurance company to "get the ball rolling" on the insurer contacting Affiant and getting an adjuster to come out and assess the damage.

17. This AOB contained no mention of the law firm McClenny, Moseley, and Associates, PLLC ("MMA").

18. State Farm Fire and Casualty ("State Farm"), Affiant's insurance company, contacted him seven days after he signed the AOB and sent an adjuster out shortly after.

19. State Farm's adjuster inspected his property on *March 24, 2022* and said that the damage was nowhere close to as severe as Apex said it was.

20. State Farm's adjuster came out a second time on *Apr 17, 2022* and told Affiant that he could use any roofer he wanted to perform the repairs.

21. Sometime thereafter, State Farm stopped communicating with Affiant. Affiant tried contacting State Farm on multiple occasions to see the status of his claim, but with no success.

22. Eventually, Affiant was able to speak to the adjuster who inspected his property, and the adjuster informed him off the record that State Farm had been served with a letter of representation by MMA, who claimed that Affiant was their client.

23. Because State Farm received this letter from MMA, the adjuster informed Affiant that State Farm was no longer able to speak to him directly.

24. This was the first time that Affiant had ever heard of MMA or heard that MMA was claiming to represent him.

25. State Farm sent Affiant a copy of the letter that MMA had sent purporting to represent Affiant.

26. Subsequent to this revelation, Affiant tried contacting MMA on numerous occasions to inform MMA that he never signed up with it and did not want it representing him.

27. His calls either went unanswered or were answered by an answering service that did not put him in touch with anyone at MMA.

28. Eventually, after days and weeks of calling, he was eventually routed to MMA's office in Houston, who then routed him to MMA's office in New Orleans.

29. Affiant was told that the New Orleans office was handling his hurricane claim.

30. The person he was routed to at the New Orleans office informed Affiant that she was not an attorney and stated that she would have to get an attorney to reach out to him to discuss his case.

31. Affiant continued to call that office for weeks until an attorney from MMA finally contacted him.

32. Affiant informed the attorney that he did not know who MMA was and had never solicited their services.

33. The attorney from MMA started explaining the benefits of signing up to have MMA represent Affiant, but Affiant said he was not interested and preferred to deal with his insurer directly.

34. Two more weeks passed and the attorney from MMA again called him to explain the benefits of signing up with MMA.

35. The MMA attorney said that Affiant would receive more from the insurance company if MMA was representing him because MMA could file suit against the insurance company for delay in settling Affiant's claim.

36. Affiant again stated to the attorney from MMA that he never agreed to have MMA represent him and did not want MMA to represent him. Affiant again reiterated that he wanted to deal with the insurance company directly.

37. State Farm told Affiant that it could not deal directly with Affiant unless MMA sent State Farm a letter stating that MMA did not represent him.

38. Affiant called MMA every single day for weeks and sent multiple texts to MMA's attorney who reached out to him, repeating that he did not want to be represented by MMA and asking MMA to send a letter to State Farm confirming that MMA did not represent him.

39. He even threatened at one point to hire an attorney to sue MMA if MMA did not write the letter.

40. After months of Affiant's calls and text messages, MMA finally agreed to write the letter to State Farm.

41. This letter was sent to State Farm via email and signed by R. William Huye, III of MMA on May 4, 2022.

42. Instead of stating that MMA never represented Affiant, MMA titled the letter "Notice of Withdrawal of Representation" and stated that the firm "will not be representing Louis Carter *any further* in connection with the above-referenced claim for damages occurring on December 6, 2021." (Emphasis Added).

43. MMA also sent Affiant a similar letter on May 4, 2022 wherein MMA references a "Contract for Legal Services" dated March 31, 2022 that was being voided in accordance with this "withdrawal" of representation.

44. Affiant never signed a Contract for Legal Services with MMA on March 31, 2022 or any other date.

Further, Affiant sayeth not.

Sworn and signed in:

_Tangipahoa_ Parish, Louisiana,
this _5/12_ day of March, 2023.

By: _____
~~Louis Carter, III~~

SUBSCRIBED AND SWORN before me
This ___12ᵗʰ___ day of March, 2023.

_____

Notary Public in and for
The State of Louisiana

NOTARY NUMBER_____

LA BAR ROLL 22698