UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUIS CARTER, III, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | * * * * |
| v. | CIVIL ACTION NO. 2:23-cv-00949-CJB-DPC * * * |
| MCCLENNY, MOSELEY & ASSOCIATES, PLLC; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; H. WILLIAM HUYE; TORT NETWORK, LLC; AND APEX ROOFING AND RESTORATION, LLC | * JUDGE CARL J. BARBIER * * MAGISTRATE DONNA PHILLIPS * CURRAULT * * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION OF ALL CLAIMS AGAINST APEX OR, ALTERNATIVELY, STAY PROCEEDINGS PENDING ARBITRATION OF ALL CLAIMS AGAINST APEX**

**MAY IT PLEASE THE COURT:**

Movant APEX Roofing & Restoration, LLC ("APEX") and Plaintiff Louis Carter, III's ("Mr. Carter") entered into a contract that included an "Assignment of Benefits" (sometimes "AOB") and a Work Order. Notably, the only relationship between Mr. Carter and APEX is that which is set forth in the AOB and related Work Order.

In order to avoid the typical time delays and expenses of litigation, that contract (specifically, the AOB) included a clause requiring that any disputes, be arbitrated. As a

4730110

result, all claims asserted herein against APEX by Mr. Carter in his now-removed Petition for Class Action, Injunctive Relief, and Damages ("Petition") are within the scope of the arbitration agreement in the AOB between Mr. Carter and APEX.  Thus, APEX moves this Court to recognize the valid, binding arbitration agreement as to all claims against APEX and to dismiss all claims against APEX pursuant to Federal Rule 12(b)(6) and/or 12(b)(1)[1], leaving Mr. Carter's claims against McClenny Moseley & Associates, PLLC, James McClenny, John Zachary Moseley, H. William Huye, and Tort Network, LLC.[2]

### I. All Claims Raised in the Petition are Governed by the Arbitration Clause in the Assignment of Benefits Executed by Mr. Carter and APEX

Mr. Carter's Petition demonstrates that his dispute against APEX involves the contract between APEX and Mr. Carter regarding roofing services to be performed by APEX for Mr. Carter, which included the AOB containing an arbitration provision. A copy of the March 15, 2022 AOB between Mr. Carter and APEX is attached as Exhibit A and the Work Order for roofing services is attached as Exhibit B.[3]

---

[1] The Eastern District of Louisiana has analyzed motions to dismiss and compel arbitration under both 12(b)(1), lack of subject matter jurisdiction, and 12(b)(6), failure to state a claim upon which relief can be granted. *See e.g. Dunn v. JPMorgan Chase Bank, N.A.*, Civ. A. No. 20-483, 2020 WL 1984328 (E.D. La. 4/27/2020) (granting motion to dismiss and compel arbitration under 12(b)(1)); *Elerath v. Vitorino*, Civ. A. No. 18-4058, 2019 WL 77235 at * 1(E.D. La. 1/2/2019)(granting motion to dismiss and compel arbitration under 12(b)(6)). Thus, APEX asserts its motion under both rules out of an abundance of caution.

[2] Alternatively, APEX moves this Court to stay all proceedings as to APEX pending the outcome of the arbitration of Mr. Carter's claims against APEX pursuant to the Federal Arbitration Act.

[3] To the extent that the dispute in this matter involves the Work Order, which was signed by Mr. Carter and APEX at the same time as the AOB, the AOB references the obligations of the Work Order and alleges that both documents together constitute the same agreement under Louisiana law and this Court's jurisprudence, such that the AOB's arbitration provision extends to any dispute regarding the contemporaneously executed Work Order as well. *See Thurman v. Wood Grp. Prod. Servs.*, No. CIV.A. 09-4142, 2010 WL 4812916, at *4 (E.D. La. Nov. 18, 2010) (holding that separate documents were part of a

As alleged in Mr. Carter's Petition, APEX approached Mr. Carter to fix his roof damaged by a hurricane, and it did so with the intention of fulfilling its business of repairing and replacing roofs. R. Doc. 1-2, Petition, ¶ 11. It further wanted and expected that Mr. Carter's property insurance company would cover the cost of APEX's efforts. To repair Mr. Carter's roof, APEX entered into a contract with Mr. Carter which stated that it would seek to repair Mr. Carter's roof. Exhibits A and B. As part of that contract, APEX and Mr. Carter both agreed that should a dispute arise regarding APEX's performance or any other matters which either party found to be in dispute regarding that contract, then Mr. Carter could proceed directly to arbitration with APEX, thereby avoiding having to file a lawsuit or get in line behind others in Court. This Motion seeks to ensure that the rights provided in that agreement are protected, so that both parties to that agreement, Mr. Carter and APEX, can obtain a swift and cost-effective resolution through arbitration.

All of Mr. Carter's allegations in his Petition concerning APEX involve the AOB: specifically, APEX and Mr. Carter's initial communications leading up to the AOB (R. Doc. 1-2, Petition, ¶¶ 11-17), Mr. Carter and APEX signing the AOB (R. Doc. 1-2, Petition,

---

single contract); *SNS Contractors v. Algernon Blair, Inc.*, 892 F.2d 430, 434 (5th Cir. 1990) ("[T]he fact that the Contractor's Consent refers to the Collateral Assignment, the construction contract, and the loan agreement indicates the parties' intent that the Contractor's Consent be interpreted together with all of these documents."); *Webb v. Children's Oncology Serv. of Louisiana, Inc.*, No. CIV. A. 88-2173, 1989 WL 92461, at *2 (E.D. La. Aug. 9, 1989) ("A contract need not be contained in one instrument.") *Lagarde v. Elms*, 541 So. 2d 413, 416 (La. App. 5 Cir. 1989) ("[T]he interrelation and apparent simultaneous execution of the documents, as well as the evidence on the parties' intentions in this transaction, require that the two documents be construed as one contract which also precludes release of the sureties.")

¶18), the contents of the AOB (R. Doc. 1-2, Petition, ¶¶ 19, 43-47), and the effects of the AOB (R. Doc. 1-2, Petition, ¶¶ 18, 45-47). Therefore, all of the claims in the Petition related to APEX are covered by the AOB's arbitration provision. The arbitration provision provides in pertinent part:

> If a dispute shall arise between Company [APEX] and Owner/Owner's Representative [Mr. Carter] with respect to ***any matters or questions arising out of or relating to this Agreement [AOB]*** or the breach thereof, such dispute other than collection matters, ***shall be decided by arbitration*** administered by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This Agreement to arbitrate shall be ***specifically enforceable*** under the prevailing arbitration law.

Exhibit A, Assignment of Benefits (emphasis added).

Mr. Carter filed this suit against APEX and several others in a court (as opposed to in arbitration) alleging a "pattern and practice of improper behavior" by APEX and in particular co-defendant McClenny Moseley & Associates, PLLC ("MMA")[4] regarding planned roof repairs to be performed by APEX in accordance with the executed AOB. *See* R. Doc. 1-2, Petition, ¶ 9. All of Mr. Carter's complaints regarding APEX arise from the AOB as the sole basis of Mr. Carter's relationship with APEX. APEX's only part in the alleged scheme that Mr. Carter describes in his Petition is the AOB, and APEX's efforts to repair Mr. Carter's roof pursuant to that agreement. Therefore, as to APEX, the arbitration provision in the AOB applies. The AOB's arbitration provision clearly encapsulates these

---

[4] When APEX came to Louisiana, it retained MMA as its legal counsel to provide APEX with legal advice as to how to legally operate in Louisiana.

types of claims in its arbitration mandate as to "*any matters or questions* arising out of or relating to this Agreement." *Id* (emphasis added).

Thus, Mr. Carter's claims against APEX can and should be sent to swift and efficient arbitration before the American Arbitration Association and dismissed from this action with prejudice, rather than proceed through the more cumbersome and costly method typically associated with judicial litigation.

## II. All Claims Against APEX Must be Arbitrated

### A. The Federal Arbitration Act Governs Mr. Carter's Claims Against APEX

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in federal court. *Hardee v. CMH Homes, Inc.*, Civ. A. No. 21-641, 2021 WL 2187932 at *1 (E.D. La. 5/28/21)(Granting motion to stay pending arbitration of dispute arising from installation of a roof); *See also Reed v. Royal Sonesta, Inc.*, Civ. A. No. 20-384-WBV-KWR, 2020 WL 3545392, at *5 (E.D. La. June 30, 2020).

The FAA, as codified at 9 U.S.C. § 2, provides that:

> *A written provision in* any maritime transaction or *a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction,* or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, <u>*shall*</u> *be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added).

As defined in Section 1 of the FAA, "commerce" regards "commerce among the several States or with foreign nations." 9 U.S.C. § 1. The FAA "provide[s] for the enforcement of arbitration agreements within the full reach of the Commerce Clause [of the United States Constitution]." *Perry v. Carter*, 482 U.S. 483, 490 (1987). Because this AOB was signed by a Louisiana citizen, Mr. Carter, and an Alabama entity, APEX, it clearly regards commerce among several states. *See Brown v. Option One Mortgages Corp.*, No. CIV.A. 10-785, 2010 WL 4812923, at *2 (E.D. La. Nov. 18, 2010) (applying the FAA to an arbitration agreement between a Louisiana citizen and California and Colorado entities).

Prior to the enactment of the FAA, courts were hostile toward arbitration agreements. *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 166 (5th Cir. 2004). The FAA was enacted to eliminate this historic hostility and embody the national policy ***favoring arbitration***. *At&t Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts now place "arbitration agreements on equal footing with all other contracts." *Id*. This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts." *Brown v. pacific Life Ins. Co.*, 462 F.3d 384, FN 8 (5th Cir 2006). *Sherman*, Civ. A. No. 13–6054, 2014 WL 4540023, at *4 (E.D. La. Sept. 11, 2014).[5]

---

[5] The Louisiana Binding Arbitration Law ("LBAL") codified at La. R.S. 9:4201 *et seq*. also favors the enforcement of arbitration clauses in written contracts and would lead to the same result as the FAA. *Aguillard v. Auction Mngt. Corp.*, 908 So.2d 1, 6 (La. 2005). The LBAL "is virtually identical to the FAA,

B.      **Fifth Circuit Applies a Two-Part Test to Determine Arbitrability**

The Fifth Circuit employs a two-part test to determine whether a party should be compelled to arbitrate. *See Jones v. Halliburton Co.*, 583 F.3d 228, 233-34 (5th Cir. 2009); *Hardee*, 2021 WL 2187932, at *1. First, federal courts determine whether the parties have an agreement to arbitrate. This inquiry is divided into two subparts: (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Id*. If both questions are answered in the affirmative, a court then asks whether any federal statute or policy renders the claims nonarbitrable. *Id*; *Klein v. Nabors Drilling USA L.P.*, 710 F. 3d 234, 236-37 (5th Cir. 2013).

1.  **A Valid Agreement to Arbitrate Exists Between Mr. Carter and APEX**

The first step of the analysis regards whether a valid agreement to arbitrate exists. The Fifth Circuit has held that "arbitration is simply a matter of contract between the parties." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). As a contract signed in Louisiana, Louisiana contract law applies to determine the validity of the arbitration agreement at this stage of the inquiry. *Option One Mortgages Corp.*, 2010 WL 4812923 at *3. Additionally, Louisiana state law is appropriate as the arbitration clause contained in the AOB signed

---

and determinations regarding the viability and scope of arbitration clauses are the same under either law, thus federal jurisprudence interpreting the FAA may be considered in construing the LBAL." *Duhon v. Activelaf, LLC*, No. 2016-CC-0818 at *6 (La. 2016).

by Mr. Carter and APEX provides that the AOB and arbitration clause "shall be governed by the laws of the State of Louisiana."

Under Louisiana law, a contract is "an agreement by two or more parties whereby obligations are created, modified, or extinguished." LA. CIV. CODE art. 1906. A valid contract requires (1) capacity (2) mutual consent (3) certain, determinable object and (4) lawful purpose. LA. CIV CODE arts. 1918, 1927, 1966 and 1971; *Brown*, 2010 WL 4812923 at *3. Here, the agreement between APEX and Mr. Carter is a valid contract because: (1) Mr. Carter is presumed to have capacity to contract and, based on Mr. Carter's Affidavit attached to his Petition he was approximately 46 years old almost one year ago when the contract was signed;[6] (2) Mr. Carter manifested his consent by signing the AOB; (3) the AOB sets forth the terms with respect to Mr. Carter's roof repairs, including potential claims against his insurer, which is a certain object; and (4) the agreements were signed as a term of his agreement with APEX for the labor, materials and services APEX was to provide for the replacement or repair of his roof, which is a lawful purpose. Further, it is well-settled that a party "who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that he did not understand it, or that the other party failed to explain it to him." *In re Cajun Elec. Power Co-op., Inc.*, 791 F.2d 353, 259 (5th Cir. 1986); *Alfortish v. GreenSky, LLC*, Civ. A. No. 16-15084, 2017 WL 699830 at *6 (E.D. La. 2/22/2017); *Aguillard v. Auction Management Corp.*,

---

[6] LA. CIV CODE art. 1918.

908 So.2d 1, 17 (La. 2005). Therefore, both APEX and Mr. Carter are bound by the AOB, including the valid, enforceable arbitration agreement that they signed.

### 2. All Claims Against APEX Fall Within the Scope of the Arbitration Agreement

Courts next determine whether the dispute falls within the scope of the arbitration agreement. In making this determination, the Fifth Circuit "focus[es] on factual allegations…rather than the legal causes of action asserted. If the allegations underlying those claims '*touch matters*' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Waste Mgmt. v. Residuos Industriales Multiquim, S.A. de C.F.*, 372 F.3d at 339,344 (5th Cir. 2004) (emphasis added). *See also Jones v. Halliburton Co.* 583 F. 3d 228, 240 (5th Cir. 2009). Moreover, a federal "*presumption of arbitrability*" applies to any ambiguities regarding the scope of the arbitration agreement so that any ambiguities are resolved in favor of arbitration. *Southland Corp v. Keating* 465 U.S. 1, 10 (1984); *Klein*, 710 F.3 at 237; *Alfortish*, 2017 WL 699830 at *3. The effect of this presumption is that: "[A] valid agreement to arbitrate applies unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Personal Sec. & Safety Systems, Inc. v. Motorola Inc.*, 297 F. 3d 388, 392 (5th Cir. 2002).

As previously discussed, it cannot be disputed, in light of this presumption of arbitrability, that the allegations set forth in Mr. Carter's Petition against APEX touch matters covered by the AOB's arbitration provision. Mr. Carter's claims include APEX

taking "unfair advantage" of him for its own enrichment via a "vast scheme involving making illegitimate claims to insurers". R. Doc. 1-2, Petition, ¶¶ 7, 8. As alleged in Mr. Carter's Petition, such scheme *could only arise* from the executed AOB as Mr. Carter asserts that APEX "wrongfully conspired with MMA,[7] and its principals, to present [his] claim to the insurance company," and APEX's legal right to make such claims were assigned to it through the AOB executed by Mr. Carter and APEX. R. Doc. 1-2, Petition ¶ 7, 8,45, 47.  These disputes against APEX are clearly within the scope of the arbitration agreement as they all arise out of and relate to Mr. Carter's contract for roof repairs with APEX and are in fact the exact types of disputes contemplated by the language of the agreement— "any matters or questions arising out of or relating to this Agreement or the breach thereof." Exhibit A.

### 3. No Federal Statute or Policy Renders the Claims Against APEX Nonarbitrable

The final inquiry is whether any federal statute or policy renders the claim nonarbitrable. *Kelly v. Berry Contracting*, Civ. A. No. 19-10501, 2019 WL 5963717, at *2 (E.D. La. Nov. 13, 2019). As the FAA was enacted to "put arbitration agreements on the

---

[7] As set forth above, Apex engaged MMA, which represented itself to Apex to be competent Louisiana counsel to represent Apex in all Louisiana matters.  It has become apparent recently that MMA has not adequately represented Apex and, in fact, has even advised Apex to take actions about which others are now complaining.  Such misdirection by Apex's attorney, MMA, cannot constitute a conspiracy; indeed, if every time an attorney mis-advised a client were to constitute a conspiracy, the definition of conspiracy would be wildly expanded. Bad advice from a lawyer does not constitute a conspiracy between the lawyer and his client.

same footing as other contracts" and under Louisiana law "[p]arties are free to contract for any object that is lawful, possible, and determined or determinable," the arbitration agreements should be enforced as to the claims against APEX as no federal statute or policy renders his claims against APEX nonarbitrable. *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC,* 379 F.3d 159, 166 (5th Cir. 2004); LA Civ. Code art. 1971.

This Court and the Fifth Circuit have enforced arbitration clauses in similar circumstances. For example, in *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, a group of cellular customers filed suit against three co-defendants alleging the defendants engaged in deceptive trade practices and breached the customers' service agreements. *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC,* 379 F.3d 159 (5th Cir. 2004). The Fifth Circuit upheld the arbitration agreements for two co-defendants and granted their motion to compel arbitration, finding that the arbitration clauses were not unconscionable or otherwise unenforceable under generally applicable principles of Louisiana law. *Id.* at 166. In *Kronloge Family Limited Partnership v. Independent Specialty Ins. Co.,* this Court enforced an arbitration agreement between a property owner and his property insurers regarding a claim for recovery of damages sustained from Hurricane Ida, holding that the plaintiff failed to overcome the "substantial burden of establishing invalidity" of the arbitration clause. *Kronloge Family Limited Partnership v. Independent Specialty Ins. Co.,* Civ. A. No. 22-1013, 2023 WL 246847 at *5 (E.D. La. 1/18/2023). As with

these cases, the arbitration provision at between APEX and Mr. Carter is valid and enforceable.

### C. Dismissal of All Mr. Carter's Claims Against APEX is Favored

Fifth Circuit precedent directs dismissal in favor of arbitration of all claims as to APEX because all of Mr. Carter's claims against APEX are subject to arbitration. Per the Fifth Circuit, while a court may not deny a stay when arbitration is requested, this rule "was not intended to limit dismissal of a case in the proper circumstances. The ***weight of authority clearly supports dismissal*** of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F. 2d 1161, 1164 (5th Cir. 1992) (emphasis added); *Freeman v. Austin Maint. and Constr., Inc.*, Civ. A. No. 16-8588, 2016 WL 7229289 (E.D. La. 12/14/2016); *S.R.P. Dev. Louisiana, LLC v. Pontchartrain Park Cmty. Dev. Corp.*, Civ. A. No. 13–5180, 2013 WL 6145227 (E.D. La. 11/21/2013) (granting defendant's motion to dismiss as all issues required arbitration); *B and S Equip. Co. v. Healtheon Inc.*, Civ. A. No. 10-1105, 2010 WL 2545590 at *2 (E.D. La. 6/16/2010)(granting defendant's motion to dismiss and compel arbitration). In this case, all of Mr. Carter's claims revolve around the AOB and, thus, require arbitration.[8]

---

[8] Alternatively, should this Court disagree with Fifth Circuit precedent supporting dismissal here, the Court must stay the proceedings as it relates to APEX pursuant to 9 U.S.C. § 3, which mandates a stay of those claims subject to arbitration on application of one of the parties.

### III.   Conclusion

The AOB between APEX and Mr. Carter, as discussed in the Petition, contains a valid and enforceable arbitration provision which requires that any matter arising out of the contract be resolved through arbitration. All of Mr. Carter's claims against APEX regarding APEX's conduct under the AOB and are therefore within the scope of the arbitration agreement and must be arbitrated. Proceeding through litigation violates that agreement, the purpose of which is to eliminate for all parties the delay and expenses more common in judicial litigation than in arbitration proceeding. Therefore APEX requests that this Court recognize the arbitration provision contained in the AOB and send all of Mr. Carter's claims against APEX to arbitration with the American Arbitration Association; and dismiss Mr. Carter's claims as to APEX in accordance with Federal Rule 12(b)(6) and/or 12(b)(1) and the FAA, leaving Mr. Carter's claims against McClenny Moseley & Associates, PLLC, James McClenny, John Zachary Moseley, H. William Huye, and Tort Network, LLC. Alternatively, APEX requests that this Court stay proceedings as to APEX pending the arbitration of Mr. Carter's claims against APEX before the American Arbitration Association as stipulated in the AOB.

Respectfully submitted,

 /s/ *Peter J. Butler, Jr.*
Peter J. Butler, Jr. (La Bar Roll No. 18522)
Richard G. Passler (La Bar Roll No. 21006)
Philip J. Giorlando (La. Bar Roll No. 38234)
Kayla M. Jacob (La. Bar Roll No. 39919)
**BREAZEALE, SACHSE & WILSON, LLP**
First Bank & Trust Tower, Suite 1500
909 Poydras Street
New Orleans, Louisiana 70112-4004
Main Phone:  (504) 584-5454 / (504) 619-1800
Fax Number:  504-584-5452
Email:     peter.butler.jr@bswllp.com
              richard.passler@bswllp.com
              philip.giorlando@bswllp.com
              kayla.jacob@bswllp.com

And

Scott R. Bickford (La. Bar Roll No. 1165)
Lawrence J. Centola, III (La. Bar Roll No. 27402)
Spencer R. Doody (La. Bar Roll No. 27795)
**MARTZELL, BICKFORD, & CENTOLA, A.P.C.**
338 Lafayette St.
New Orleans, LA 70130
Main Phone: (504)581-9065
Fax Number: (504)581-7635

*Counsel for APEX Roofing and Restoration, LLC*

4730110

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY**, that a copy of the above and foregoing pleading has been filed via the Court's CM/ECF Electronic Filing system and forwarded to known counsel of record for all parties and to parties not represented by counsel via U.S. Mail on this 17th day of March, 2023, as follows:

Louis Carter, III
Through his Counsel of Record
Robert E. Couhig, Jr.
Donal C. Massey
Couhig Partners, LLC
3250 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

James McClenny
380 Ridge Lake Scenic Dr.
Montgomery, TX 77316

John Zachary Moseley
1214 W. Dallas St.
Houston, TX 77019

H. William Huye
1820 St. Charles Ave.
New Orleans, LA 70130

Tort Network, LLC
Through its registered agent for service of process in Arizona
MPBG Service, LLC
Attn: Taylor Gustafson
1850 N. Central Ave. Suite 1600
Phoenix, AZ 85004

                                          */s/ Peter J. Butler, Jr.*