UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUIS CARTER, III, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br>　　　　Plaintiff<br>v.<br><br>MCCLENNY, MOSELEY & ASSOCIATES, PLLC; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; H. WILLIAM HUYE; TORT NETWORK, LLC; AND APEX ROOFING AND RESTORATION, LLC<br>　　　　Defendants | CASE NO. 2:23-cv-00949-CJB-DPC<br><br>JUDGE CARL J. BARBIER<br><br>MAGISTRATE DONNA PHILLIPS CURRAULT |

**OPPOSITION TO MOTION TO DISMISS ALL CLAIMS AGAINST APEX AND COMPEL ARBITRATION OR, ALTERNATIVELY, STAY PROCEEDINGS PENDING ARBITRATION OF ALL CLAIMS AGAINST APEX**

MAY IT PLEASE THE COURT:

Plaintiff, Louis Carter, III, individually and on behalf of others similarly situated offers this Opposition to Defendant Apex Roofing and Restoration, LLC's ("Apex") Motion To Dismiss All Claims Against Apex and Compel Arbitration or, Alternatively, Stay Proceedings Pending Arbitration of All Claims Against Apex (the "Motion").[1]

### Introduction

Unlike what Apex Roofing suggests, this is not a dispute about roof repairs, untimeliness in repairing roofs, or in some dissatisfaction with Apex work product. As one Judge in this Court put it in a recent order, McClenny, Moseley and Associates ("MMA"), and its principals, engaged in "a pattern of misconduct on a scale "likely never before seen [in this State]."[2] MMA was not

---

[1] R. Doc. 3.
[2] *Franatovich v. Allied Trust Company,* Docket No. 2:22-cv-02552, R. Doc. 76, Eastern District of Louisiana.

alone in this misconduct – as that same judge pointed out, MMA was "assisted in its misdeeds by an Alabama-based roofing contractor, [Apex Roofing and Restoration, LLC,] and an Arizona-based, modern day case runner[, Tort Network, LLC d/b/a "Velawcity"].[3]

MMA, along with its co-conspirators, contrived a scheme through which the co-conspirators would illegally refer legal representation of Louisiana property owners with storm damaged homes and property, who otherwise had no connection to MMA, to MMA. MMA, in turn, illegally took on the cases, many times with homeowners unaware they "had a lawyer" at all. Through this massive, illegal case running scheme, MMA has claimed to represent thousands of homeowners and others claiming property damages as a result of recent hurricanes and windstorms against first party insurers.

Because MMA's claims to represent these thousands of hurricane and storm victims are based on unlawful, expressly prohibited practices, MMA and its jointly and severally liable co-conspirators are required to disgorge all attorney's fees that have been taken from all of MMA's representation of persons swept up in the illegal case running scheme. Any alleged legal engagements obtained in conjunction with these schemes were unlawful and void ab initio. Fees taken on any settlements ostensibly for plaintiffs and putative class members must be deposited into a court registry. Any future fees, if any, that MMA may be determined to have a potential claim upon, must also be preserved. MMA and its co-conspirators must pay attorney's fees and statutory penalties for their breaches of clear statutory obligations, and it is imperative that each must cease and desist all of the misconduct that promoted the filing of this suit.

---

[3] *Franatovich v. Allied Trust Company,* Docket No. 2:22-cv-02552, R. Doc. 76, Eastern District of Louisiana.

The illegal scheme in which Apex participated was not described, disclosed, alluded to or in any way revealed in Apex′s discussions with, or documents signed by, unsuspecting property owners at their most vulnerable.  Indeed, Apex appears to continue to conceal and cloak the scheme. Again, this case is not about roofing work, or anything else "arising under" a roofing contract with Apex roofing. Apex's arguments in favor of arbitration focus on the Assignment of Benefits, but this reliance too is misplaced. Plaintiff, and those similarly situated, were harmed by conduct that extends beyond and independent of the Assignment of Benefits. Apex admits as much through their own filings in another case, though they are hardly the innocent bystander who had the wool pulled over their eyes.  Moreover, a review of the law surrounding contracts like Apex′s document in this case reveals that even if a cloaked and concealed case running scheme somehow was part and parcel of an agreement to perform roofing work, Apex′s arguments for arbitration are unavailing.  Instead, any argument for arbitration Is defeated by application of Apex′s chosen law - Louisiana law.

**Law and Argument**

Arbitration is a contractual matter, and no party may be forced to arbitrate a dispute unless he has expressly agreed to do so by contract.[4]  In determining whether the parties to a contract have agreed to arbitrate their disputes, the Fifth Circuit follows a two-part test, examining (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.[5]  When undertaking this analysis,

---

[4] *Air Line Pilots Ass'n v. Miller,* 523 U.S. 866, 876, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998).
[5] *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996)

courts "should apply ordinary state-law principles that govern the formation of contracts."[6] In Louisiana, the threshold inquiry is whether the parties have agreed to arbitrate the dispute in question.[7] Arbitration may be denied with positive assurance that the arbitration clause is not susceptible of an interpretation that would cover the dispute at issue.[8]

## I.     The Arbitration Clause is an Unenforceable Contract of Adhesion

The party seeking to enforce an arbitration clause bears the burden of showing that a valid agreement to arbitrate exists.[9] "Broadly defined, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party."[10] Adhesion contracts call into question whether consent was actually properly given. Consent is called into question by the standard form, small print, and most especially the disadvantageous position of the accepting party, which is further emphasized by the potentially unequal bargaining positions of the parties.[11] Once consent is called into question, the party seeking to invalidate the contract as adhesionary must then demonstrate the non-drafting party either did not consent to the terms in dispute or his consent was vitiated by error, which in turn, renders the contract or provision unenforceable.[12] Courts evaluate whether an arbitration clause is adhesionary and unenforceable by considering the following factors: (1) the physical

---

[6] *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The court's application of state law principles must also give "due regard ... to the federal policy favoring arbitration." *Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).
[7] *Johnsons, Inc. v. GERS, Inc.*, 34,268 (La. App. 2 Cir. 1/24/01), 778 So.2d 740.
[8] *Safer v. Nelson Fin. Grp., Inc.*, 422 F.3d 289, 294 (5th Cir. 2005).
[9] *Alfortish v. GreenSky, LLC*, CV 16-15084, 2017 WL 699830, at *3 (E.D. La. Feb. 22, 2017).
[10] *Aguillard v. Auction Mgmt. Corp.*, 2004-2804, p. 9 (La. 6/29/05); 908 So.2d 1, 8–9 (quoting *Golz v. Children's Bureau of New Orleans*, 326 So.2d 865, 869 (La.1976), appeal dismissed, 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 827 (1976)).
[11] *Aguillard v. Auction Mgmt. Corp.*, 2004-2804, p. 12 (La. 6/29/05); 908 So.2d 1
[12] *Aguillard v. Auction Mgmt. Corp.*, 2004-2804, p. 12 (La. 6/29/05); 908 So.2d 1.

characteristics of the arbitration clause, (2) the distinguishing features of the arbitration clause, (3) the mutuality of the arbitration clause, and (4) the relative bargaining strength of the parties.[13]

Courts examining the physical characteristics and distinguishing features of the arbitration clause look at whether the clause is consistent in size and font with the other provisions of the agreement and the placement of the clause in the agreement.[14] For example, In *Aguillard*, the Louisiana Supreme Court noted that "the arbitration provision, although not distinguished, was not concealed in any way, but rather was contained in a single sentence paragraph separated from the preceding and following paragraphs by double spacing."[15] In contrast, the *Duhon* Court found that the placement of the arbitration clause in a paragraph involving multiple topics concealed the arbitration provision in such a way that Plaintiff could not have truly consented to it.[16]

The arbitration clause in the Apex AOB is written and formatted as follows:

ARBITRATION

1.     If a dispute shall arise between Company and Owner/Owner's Representative with respect to any matters or questions arising out of or relating to this Agreement or the breach thereof, such dispute, other than collection matters, shall be decided by arbitration administered by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.  The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any Court having jurisdiction thereof. In the event there is litigation, the parties **KNOWINGLY, VOLUNTARILY, IRREVOCABLY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION ARISING OUT OF OR PERTAINING TO THE AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PERSON OR PARTY**

---

[13] *Duhon v. Activelaf, LLC*, 2016-0818, p. 9 (La. 10/19/16), 2016 WL 6123820, *6; *Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 2007-146 (La.App. 3 Cir. 12/12/07, 11–15); 971 So.2d 1257, 1266–68, *writ denied,* 2008-0094 (La. 3/14/08); 977 So.2d 931.
[14] *Aguillard v. Auction Mgmt. Corp.*, 2004-2804, p. 16 (La. 6/29/05); 908 So.2d 1; *Duhon v. Activelaf, LLC*, 2016-0818, p. 9 (La. 10/19/16), 2016 WL 6123820, *6.
[15] *Aguillard v. Auction Mgmt. Corp.*, 2004-2804, p. 16 (La. 6/29/05).
[16] *Duhon v. Activelaf, LLC*, 2016-0818, p. 9 (La. 10/19/16), 2016 WL 6123820, *6.

> **RELATED TO THIS AGREEMENT; THIS IRREVOCABLE WAIVER OF THE RIGHT TO A JURY TRIAL BEING A MATERIAL INDUCEMENT FOR THE PARTIES TO ENTER INTO THIS AGREEMENT.** This Agreement shall be governed by the laws of the State of Louisiana. The losing party in any legal or equitable action to enforce this Section 25 or arising out of or relating to this Agreement including appellate and/or bankruptcy proceedings shall reimburse the prevailing party on demand for all attorney's fees, costs, and expenses incurred by the prevailing party in connection with the action.

As far as its placement in relation to the rest of the agreement, this arbitration clause is found on the back of the Assignment of Benefits under a "TERMS AND CONDITIONS" heading.[17] The Assignment of Benefits requires Mr. Carter to sign on the front of the agreement, but there is no signature block on the back after these additional terms and conditions, nor is there a reference to these additional terms and conditions on the front of the agreement.[18]

Though the arbitration clause at first appears to be set apart under the "ARBITRATION" heading, the clause is technically one of three numbered paragraphs that fall under the "ARBITRATION" heading.[19] The two preceding paragraphs before the "ARBITRATION" heading are not numbered and have their own headings.[20] Additionally, the arbitration clause contains a portion set apart in a different font that is bold and capitalized, but this portion of the clause is discussing the waiver of trial by jury in the event of litigation arising under the agreement.[21] The bold and capitalized nature of this portion draws the reader's attention *away* from the arbitration language. The cumulative effect of these features is to cloak the arbitration

---

[17] R. Doc. 3-2.
[18] R. Doc. 3-2.
[19] R. Doc. 3-2.
[20] R. Doc. 3-2.
[21] R. Doc. 3-2.

clause within a blanket of boilerplate language that conceals the clause and makes it more difficult to find that an individual properly consented to it.[22]

The arbitration clause in the AOB also lacks mutuality. When evaluating this factor, courts examine whether any party has reserved any rights to litigate any issue in the contract.[23] The AOB arbitration clause specifically reserves the right to litigate "collection matters" under the agreement, which necessarily can only be exercised by Apex as the entity being assigned the rights to collect the insurance proceeds and any additional payments from the Property Owner.[24] Accordingly, this factor also weighs in favor of finding the arbitration clause to be adhesionary and unenforceable.

## II. Plaintiff's dispute is not covered by the scope of the arbitration clause.

Even if the arbitration agreement is valid and theoretically enforceable, it does not apply to Plaintiff's claims. Although arbitration clauses are generally construed in favor of arbitration, the purpose of the Federal Arbitration Act simply was to place arbitration agreements "upon the same footing as other contracts."[25] Just as courts apply state law concepts to determine whether a valid agreement to arbitrate exists, courts apply state law principles to determine whether the scope of an arbitration agreement covers the dispute in question.[26]

---

[22] *See Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc.*, 2007-146 (La.App. 3 Cir. 12/12/07, 11–15); 971 So.2d 1257, 1266–68, *writ denied,* 2008-0094 (La. 3/14/08); 977 So.2d 931; *cf. Gautier v. Bactes Imaging Sols., LLC.*, CV 18-1435, 2018 WL 4095153, at *3 (E.D. La. Aug. 28, 2018) (finding an arbitration agreement to not be adhesionary when it was a stand-alone document being presented with other documents, was signed by the individual under the text of the arbitration clause, and contained a bold heading in larger print than the text.
[23] *Aguillard v. Auction Mgmt. Corp.*, 2004-2804, p. 21 (La. 6/29/05); 908 So.2d 1; *Duhon v. Activelaf, LLC*, 2016-0818, p. 9 (La. 10/19/16), 2016 WL 6123820, *6.
[24] R. Doc. 3-2.
[25] *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–11, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (internal citation omitted).
[26] *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (in construing an arbitration agreement within the coverage of the FAA, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability").

"[A] contract is ambiguous, under Louisiana law, 'when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction.'"[27] "When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties."[28] Indeed, the "words of a contract must be given their generally prevailing meaning," and an ambiguous provision "must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective."[29] When interpreting contractual provisions susceptible to different or conflicting meanings, a court should interpret them "to avoid neutralizing or ignoring any of them or treating them as surplusage."[30] Furthermore, "a provision in a contract must be interpreted against the party who furnished its text," and "a contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."[31]

The Fifth Circuit has distinguished between "narrow" and "broad" arbitration clauses.[32] Narrow arbitration clauses are ones where the language of the clause requires the arbitration of disputes "arising out of" the agreement, whereas broad arbitration clauses, in a general sense, are those where the language of the clause requires arbitration of any dispute that

---

[27] *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998) (quoting *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996)).
[28] *Lobell v. Rosenberg*, 2015-0247, p. 8 (La. 10/14/15); 186 So.3d 83 (citing *Prejean v. Guillory*, 38 So. 3d 274, 279 (La. 2010)); *see also* La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made[.]").
[29] *Id.* (citing La. Civ. Code art. 2049).
[30] *Rest. Dev. Corp. of La. v. Standard Bldg. Co.*, No. 07-3771, 2007 WL 2284559, at *2 (E.D. La. Aug. 7, 2007) (Feldman, J.) (quoting *Lambert v. Md. Cas. Co.*, 418 So. 2d 553, 559–60 (La. 1982)).
[31] Louisiana Civil Code art. 2056; *see also Pegasus Int'l Inc. v. Champagne*, CIV. 6:11-1402, 2012 WL 5616095, at *6 (W.D. La. May 11, 2012), *report and recommendation adopted*, CIV.A. 6:11-1402, 2012 WL 5818217 (W.D. La. Nov. 15, 2012).
[32] *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed.Appx. 188, 192 (5th Cir.2009).

"arises out of or relates to" the entire agreement, or disputes that are "in connection with" the entire agreement.[33] If the clause is narrow, the matter should not be referred to arbitration or the action stayed, unless the court determines that the dispute falls within the clause.[34]

While the arbitration clause in the AOB does have "relating to" language, it is not nearly as comprehensive as other arbitration clauses that Louisiana courts have deemed to be broad in nature.[35] For example, in *Snyder v. Belmont Homes, Inc.*, the First Circuit Court of Appeals of Louisiana found that the following arbitration clause in a mobile home purchase agreement was broad enough to encompass a personal injury claim resulting from toxic mold:

> [A]ny dispute, controversy or claim of any kind or nature which has arisen or may arise between the parties, their successors, assigns, heirs, representatives, parent companies, divisions, subsidiaries, affiliates, officers, directors, employees, agents, and contractors (including any dispute, controversy or claim relating the validity of this arbitration clause), whether arising out of past, present or future dealings between the parties ... shall be governed by the Federal Arbitration Act and shall be settled by arbitration."[36]

The court reasoned that the wording of this particular agreement clearly states that any and all claims of any nature will be settled by arbitration, which necessarily includes tort and contract claims; and that "but for" the defects in the product resulting in the mold, the plaintiff would have no tort claim against defendants for toxic mold.[37] Therefore, this clause is sufficiently broad and sufficiently clear to include this toxic mold tort claim.[38]

---

[33] *See Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed.Appx. 188, 192 (5th Cir.2009).
[34] *Baudoin v. Mid-Louisiana Anesthesia Consultants, Inc.*, 306 Fed.Appx. 188, 192 (5th Cir.2009).
[35] *See Johnson v. Blue Haven Pools of Louisiana, Inc.*, 2005-0197, p. 7 (La.App. 1 Cir. 2/10/06); 928 So.2d 594, 598; *see also Hansford v. Cappaert Manufactured Hous.*, 40,160, p. 7 (La.App. 2 Cir. 9/21/05); 911 So.2d 901, 906, *writ denied,* 2005-2338 (La. 3/17/06); 925 So.2d 542 ("Although law and policy both favor arbitration, neither can supply an agreement to arbitrate where there is none.").
[36] 2004-0445, p. 7 (La.App. 1 Cir. 2/16/05); 899 So.2d 57, *writ denied,* 2005-1075 (La. 6/17/05); 904 So.2d 699.
[37] *Snyder v. Belmont Homes, Inc.*, 2004-0445, p. 7 (La.App. 1 Cir. 2/16/05); 899 So.2d 57, *writ denied,* 2005-1075 (La. 6/17/05); 904 So.2d 699.
[38] *Snyder v. Belmont Homes, Inc.*, 2004-0445, p. 7 (La.App. 1 Cir. 2/16/05); 899 So.2d 57, *writ denied,* 2005-1075 (La. 6/17/05); 904 So.2d 699.

This is vastly different than the arbitration clause in the instant case. Apex claims that "Mr. Carter's Petition demonstrates that his dispute against APEX involves the contract between APEX and Mr. Carter regarding roofing services to be performed by APEX for Mr. Carter, which included the AOB containing an arbitration provision."[39] The Acknowledgement section of the AOB contains, in pertinent part:

> Property Owner has entered into an agreement (the "Contract") with Apex Roofing and Restoration, LLC ("Company") which sets forth the labor, materials and services that Company shall provide to Property Owner for the replacement or repair of the Property (the "Work"); and the insurer listed above ("Insurer") may require that Property Owner execute **this Assignment of Benefits (this "Assignment")**…[40]

The arbitration provision provides in pertinent part:

> If a dispute shall arise between Company [APEX] and Owner/Owner's Representative [Mr. Carter] with respect to any matters or questions arising out of or relating to **this Agreement** or the breach thereof, such dispute other than collection matters, shall be decided by arbitration administered by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. **This Agreement to arbitrate** shall be specifically enforceable under the prevailing arbitration law.[41]

The term "Agreement" is only referenced in the three numbered paragraphs of the ARBITRATION section of the AOB, therefore this arbitration clause should be interpreted in accordance with its plain reading to narrowly apply to disputes with respect to "matters or questions" arising out of or relating to Section 2 of the arbitration section, which refers to the bidding process Apex will undertake to set the Scope of Work and Contract Price for the Work,

---

[39] R. Doc. 3-1
[40] R. Doc. 3-2 (emphasis added).
[41] R. Doc. 3-2 (emphasis added).

and Section 3 of the arbitration section, which involves stipulated damages for the reordering and restocking of materials due to cancellation or delay.[42]

Even if the arbitration clause is broad, there are limits to what types of disputes will fall within the clause's scope.[43] In *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, the Fifth Circuit found that a doctor's false advertising claim against a HMO did not "arise out of or relate to" his agreement with the HMOs because none of the elements of his claim depended, as a legal matter, on the agreement between himself and the HMOs.[44] In affirming the district court's determination on this point, the Fifth Circuit stated:

> As the district court correctly determined, Dr. Ford could maintain this action without reference to the agreement. The action is based on the manner in which the HMOs advertised their services to consumers. The competitive injuries alleged by Dr. Ford come in the form of patients and revenue lost as a result of consumers being misled into participating in the HMOs' health plan instead of going directly to the doctor of their choice and seeking reimbursement through the traditional health insurance route. Dr. Ford clearly would suffer the same injuries regardless of the agreement or a breach thereof. Although the policies, practices, and procedures implemented by the HMOs, as they appear in the terms of the agreement, would undoubtedly be relevant evidence in support of Dr. Ford's claims (*e.g.,* to show that the HMOs use procedures resulting in care different from that advertised), this evidence could likewise be established with witness testimony and documents, which exist independent of the agreement. In other words, the fact that an agreement exists between Dr. Ford and the HMOs is legally irrelevant and indeed can be treated as nonexistent as far as his false advertising claim is concerned. In fact, the agreement will likely play, even as a purely evidentiary matter, a very minor role in the ultimate litigation of Dr. Ford's false advertising claim.[45]

Likewise, numerous other courts have refused to submit claims to arbitration when the violative conduct at issue has nothing to do with the performance of the contract containing the clause, while

---

[42] R. Doc. 3-2.
[43] *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 252 (5th Cir.1998)
[44] *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 252 (5th Cir.1998)
[45] *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 252 (5th Cir.1998) (internal citations omitted).

other courts have found that arbitration clauses covering disputes relating to contract *performance* do not apply to disputes over contract *interpretation* and vice versa.[46]

In *Tittle v. Enron Corp.*, the Fifth Circuit held that disputes over the distribution of proceeds of insurance policies did not fall within scope of the arbitration clause in the policy itself because the arbitration clause extended only to disputes arising out of or related to the policies that included an insurer and one or more insureds, and no insurers were involved in the present dispute.[47] The Eight Circuit, in *Meierhenry Sargent LLP v. Williams*, held that a claim against a law firm for damages was not subject to an arbitration clause that applied to disagreements about a termination fee potentially owed *to* the law firm.[48]

In *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, a customer's contract with a service station operator for an oil change, in which he agreed to submit "any and all disputes" to arbitration, did not encompass the customer's claim that the operator violated the Telephone Consumer Protection Act (TCPA) by causing a marketing firm to send unsolicited text messages to his cellular telephone.[49] The court in *Jiffy Lube* observed that the TCPA claim did not arise from services for which customer had contracted with operator, and that if a suit regarding a tort action arising from a completely separate incident could be forced into arbitration—such a clause would clearly be

---

[46] *Papalote Creek II, L.L.C. v. Lower Colorado River Auth.*, 918 F.3d 450, 455–56 (5th Cir. 2019)(A dispute regarding over whether a power purchase agreement between a wind farm operator and a district was a dispute related to the interpretation of the agreement, not a performance-related dispute, and thus the dispute did not fall within the scope of the agreement's arbitration clause); *see also Metro Riverboat Assocs., Inc. v. Bally's Louisiana, Inc.*, 97-1672 (La. App. 4 Cir. 1/14/98), 706 So. 2d 553, 558, writ denied, 98-0679 (La. 5/29/98), 720 So. 2d 339 (dispute over interpretation of operating agreement terms was not "a dispute ... with respect to the management and operation of the Company" as required to trigger the arbitration clause at issue).
[47] 463 F.3d 410 (5th Cir. 2006); see also *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019)(finding a dental equipment distributor's action against competitor, asserting antitrust violations and seeking injunctive relief, was not subject to mandatory arbitration pursuant to arbitration clause in a dealer agreement where the arbitration clause contained a carve-out for actions seeking injunctive relief, and the clause did not limit the exclusion to actions seeking only injunctive relief or to claims for injunctive relief.
[48] 915 F.3d 507, 511 (8th Cir. 2019)
[49] 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012).

unconscionable.[50] In reaching this decision, the court cited to *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir.2003), where "Judge Posner noted that if there were no limiting clause in the arbitration agreement at issue in that case, 'absurd results [would] ensue,' such that if a defendant murdered the plaintiff in order to discourage default on a loan, the wrongful death claim would have to be arbitrated.[51]

The Eighth Circuit, in *Anderson v. Hansen*, held that an arbitration clause in an agreement between an independent contractor and an employer did not mandate arbitration of a law of sexual assault made by the independent contract against an employee of the employer.[52] *Norcom Elecs. Corp. v. CIM USA Inc.*, held a distributor's claim against a manufacturer for tortious interference with business relationships was outside the scope of a broad arbitration clause in the parties' distributorship agreement to extent that the claim relied on allegations that the manufacturer solicited the distributor's key employees.[53] The Court found an insufficient nexus between allegations and the agreement.[54]

This case is no different. Apex claims the disputes against it "are clearly within the scope of the arbitration agreement as they all arise out of and relate to Mr. Carter's contract for roof repairs with APEX and are in fact the exact types of disputes contemplated by the language of the agreement— 'any matters or questions arising out of or relating to this Agreement or the breach

---

[50] *Id.*
[51] *Id.*; *Getz v. DIRECTV, LLC*, 359 F. Supp. 3d 1222, 1229 (S.D. Fla. 2019)(consumer's claim against former internet service provider for sending telemarketing text message to his personal cellular phone in violation of Telephone Consumer Protection Act (TCPA) did not relate to his customer agreement with provider; *Ramos v. PH Homestead, LLC,* 358 F.Supp.3d 1355 (S.D.Fla.2019)(same).
[52] 47 F.4th 711, 715 (8th Cir. 2022)(citing *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1215 (11th Cir. 2011)and *Jones v. Halliburton Co.*, 583 F.3d 228 (5th Cir. 2009)).)
[53] 104 F. Supp. 2d 198, 205 (S.D.N.Y. 2000).
[54] *Id.* (citing numerous Second Circuit decisions holding "that a claim for tortious interference with employment contracts does not arise under or relate to a separate sales agreement.").

thereof.' Exhibit A."[55] Apex's claims are belied not only by the facts but by its own representations in its own lawsuit against MMA.

As to the factual background of this case, Mr. Carter's affidavit details his storm damage and the aggressive pursuit of his claim by Apex, the documents and pitches made to him. All of this is discussed, not in the context of a claim for Apex's failure to repair or collect insurance, but rather for Apex's role in the misrepresentation and conversion of his insurance claim by MMA, a law firm not mentioned by Apex's door knocker in the conversation with Mr. Carter or the documents the door knocker presented to Mr. Carter. His affidavit details that he was only able to uncover MMA's role when he contacted the State Farm adjuster who came to inspect his house. Mr. Carter sought out the adjuster about the status of his claim, and the adjuster informed him that MMA had sent a letter of representation to State Farm.

Mr. Carter's petition and requested injunctive relief makes clear that this is not a case about Apex's work on his roof. This is a case seeking to protect he and those similarly situated for the scheme perpetrated by MMA to trump up and inflate his insurance claim and take 40% of it as an attorney fee all without ever making contact with the homeowner and all without even the homeowner's knowledge. Apex was MMA's conduit to the victims in this scheme, and it should answer for this role not in arbitration reserved for workmanship claims, but before this Court.

Plaintiff's causes of action make plain that this dispute is outside of the scope of the Apex AOB. Plaintiff seeks damages, penalties and fees against the Defendants for the unauthorized practice of law in violation of La. Rev. Stat. Ann. § 37:213.1, for tortious conduct, and for violation of the Texas Deceptive Trade Practices Act. At the center of each of these causes of action is the

---

[55] R. Doc. 3-1

scheme to conceal from Plaintiff that MMA was representing him without his knowledge and seeking to cash in on a 40% contingency fee. At the center of the damages and injunctive relief claim is an effort to effect a disgorgement of any attorneys fees collected and to prevent the future collection of any fee by MMA or any other law firm acting with valid authority. The case does not center on or involve the "Work" Apex was authorized to perform and collect payment on.

The petition recently filed by Apex against MMA in state court further illustrates this point. It states "Having obtained an assignment in its favor to repair its customers' roofs, Huye and MMA were to have only represented Apex's interest…. Huye and MMA proceeded to issue letters of representation and/or make legal representations claiming that Huye and MMA represented not Apex but Apex's customers."[56] "MMA, through its Louisiana counsel Huye, approved an assignment of benefit form which would be given to Apex's customers. Apex never intended for Huye to represent anything but Apex's interest in securing funds through an AOB to facilitate the prompt repair or replacement of Apex's customer's roofs."[57] "Apex hired MMA, as its counsel, not as counsel for individual homeowners."[58]

Where the customer's policy did not allow for an assignment, Apex planned to notify them so they could "make alternative arrangement for paying for the roof repair."[59] Plainly, Apex does not view the AOB as conferring the right for it to retain a law firm to pursue the insurance claim on behalf of the homeowner. This case is about the law firm pursuing the insurance claim on behalf of the homeowner, and thus, by Apex's own account, this lawsuit is outside the scope of the AOB.

---

[56] Exhibit 1 – Apex Petition.
[57] Exhibit 1 – Apex Petition, ¶13.
[58] Exhibit 1 – Apex Petition, ¶26.
[59] Exhibit 1 – Apex Petition, ¶14.

Apex understood its AOB was limited to roof repair reimbursement and was surprised MMA was seeking coverage payments which were not so confined.[60]

"If Apex had wanted MMA to represent the individual homeowner, then the entire AOB would be useless. The whole purpose of the AOB was to give Apex the right to seek funds directly from the insurer to cover the costs of the roof repairs, not to give MMA the right to sue on behalf of the individual homeowner."[61] This is a concession that MMA's right to act as lawyer for the class of homeowners is outside the scope of the AOB, and hence the present case is not subject to the AOB's arbitration provision.

## Conclusion

Apex's motion should be denied. This is not a roofing case. The present case is about a pattern of misconduct never before seen in this State that was perpetrated by McClenny, Moseley and Associates ("MMA"), and its principals, with the help of Defendants Apex and Velawcity. Apex is being sued for its role in this scheme. This is outside of the scope of the contracts related to Apex's roof work which contain an arbitration clause. Apex admits this in its own lawsuit.

Moreover, the arbitration clause at issue is not even enforceable. It is a clear contract of adhesion that lacks mutuality. The law of this Circuit requires denial of the present motion.

Respectfully Submitted:

*/s/ Donald C. Massey*
**Robert E. Couhig, Jr. (#4439)**
**Donald C. Massey (#14177)**
**Jonathan P. Lemann (#26380)**
**Jason A. Cavignac (#27990)**
**Robert. E. Couhig, III (#29811)**
**Blair C. Constant (#33071)**
**R. Tate Martin II (#38045)**

---

[60] Exhibit 1 – Apex Petition, ¶18.
[61] Exhibit 1 – Apex Petition, ¶28.

                **COUHIG PARTNERS, LLC**
                3250 Energy Centre
                1100 Poydras Street
                New Orleans, Louisiana 70163
                (504) 588-1288
                (504) 588-9750 *fax*

                and

                **Daniel Edwards (#22698)**
                PO Box 456
                Hammond, LA 70404
                985-517-0909
                danieledwardsatty@gmail.com

                *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 28, 2023, a true and correct copy of the foregoing motion was served on all counsel of record through the Court's electronic filing system, and that a copy of the same is being served on all known counsel of record for all parties and to parties not represented by counsel via U.S. Mail on March 29, 2023, as follows:

**James McClenny**
380 Ridge Lake Scenic Dr.
Montgomery, TX 77316

**John Zachary Moseley**
1214 W. Dallas St.
Houston, TX 77019

**H. William Huye**
1820 St. Charles Ave.
New Orleans, LA 70130

**Tort Network, LLC**
Through its registered agent for service of process in Arizona
MPBG Service, LLC

Attn: Taylor Gustafson
1850 N. Central Ave. Suite 1600
Phoenix, AZ 85004


**Apex Roofing and Restoration, LLC**
Through its Counsel of Record
Peter J. Butler, Jr.
Richard G. Passler
Philip J. Giorlando
Kayla M. Jacob
First Bank & Trust Tower, Suite 1500
909 Poydras Street
New Orleans, Louisiana 70112-4004

And

Scott R. Bickford
Lawrence J. Centola, III
Spencer R. Doody
338 Lafayette St.
New Orleans, LA 70130


                                */s/ Donald C. Massey*
                                   Donald C. Massey