**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LOUIS CARTER, III, individually and on behalf of a class of those similarly situated,** | **CIVIL ACTION** |
| **Plaintiffs,** | **NO. 23-949** |
| **v.** | |
| **MCCLENNY, MOSELEY & ASSOCIATES, PLLC; JAMES MCCLENNY; JOHN ZACHARY MOSELEY; H. WILLIAM HUYE; TORT NETWORK, LLC; AND APEX ROOFING AND RESTORATION, LLC,** | **SECTION: J   MAG. 2** |
| | **JUDGE BARBIER** |
| **Defendants.** | **MAGISTRATE CURRAULT** |

**BRIEF SUBMITTED BY PLAINTIFF'S COUNSEL**
**REGARDING THE ABSENCE OF ANY CONFLICTS**

Plaintiff's Counsel respectfully submit the following memorandum in response to the Court's question during the Status Conference held on April 5, 2023 as to whether some of the attorneys' roles as Special Master in the 24th Judicial District Court Hurricane Ida proceedings raises any potential conflicts with respect to their representation of Mr. Carter herein[1]:

**MAY IT PLEASE THE COURT:**

In connection with their service as Special Masters in the State Court proceedings, neither Mr. Massey nor Mr. Constant have ever presided over a lawsuit or other matter regarding Mr. Carter or his insurance-related claims. The only potential "conflict" that could arise under Rule of Professional Conduct 1.12(a), therefore, would relate to the possible claims of putative class members. In this respect: **(i)** the Rules relating to conflicts-of-interest are not generally applied mechanically with respect to unnamed class members; **(ii)** the Special Masters' minimal

---

[1] *See* Doc. 13, at p.1.

involvement in only a handful of MMA-related Jefferson Parish cases was not "substantial" but merely administrative;  **(iii)** significantly, and in particular, the Special Masters are not in possession of any confidential information that could be used to unfairly benefit or harm any of the parties to this particular action; (and, indeed, the insurance company defendants in the underlying 24th JDC proceedings are not before the Court here and have no interests at stake);  and **(iv)** Mr. Massey and Mr. Constant have recused themselves from any present and future MMA-related 24th JDC cases, and the Court has established a screening process so that any such case would be assigned to the third Special Master.  Therefore, no disqualifying conflict exists.

Moreover, and even assuming *arguendo* that there were an arguable "conflict" with respect to Mr. Massey or Mr. Constant, such disqualification would not be imputed to other Couhig Partners attorneys, so long as Massey and Constant (who recused themselves from any and all MMA-related Jefferson Parish cases *before* getting involved in the instant action) are screened off from the representation.

Mindful of the significance of the relief they are seeking for the putative class, Plaintiff's Counsel desire to avoid even the hint of any appearance of impropriety, undue distraction, or unnecessary delay.   Accordingly, Mr. Massey and Mr. Constant will withdraw from this proceeding and Couhig Partners will screen them from any further involvement in the case.[2]

For these reasons, and for the reasons further stated herein, Mr. Couhig, Mr. Lemann, Mr. Cavignac, Mr. Couhig, Mr. Martin, and the Couhig Partners LLC Law Firm should be permitted to continue representing Mr. Carter and the putative class.

---

[2] Plaintiff's Counsel will further supply opposing counsel and/or the Court with any additional information that might be necessary and appropriate to verify compliance with the Rules as contemplated by Rule of Professional Conduct 1.12(c)(2).

## **Table of Contents**

Introduction   .   .   .   .   .   .   .   .   .   .   1

Table of Contents   .   .   .   .   .   .   .   .   .   3

Table of Authorities   .   .   .   .   .   .   .   .   .   4

The 24th JDC Appointment and CMO Process   .   .   .   .   .   5

MMA-Related Case Activity within the 24th JDC Process   .   .   .   .   7

There Is No Conflict Under Rule 1.12(a)   .   .   .   .   .   .   9

Massey and Constant's Concurrent and Continued Service as Special Masters
Gives rise to No Potential Conflicts   .   .   .   .   .   .   .   .   12

Even Assuming *Arguendo* a "Conflict" with Respect to Constant and/or Massey,
Such Conflict is Not Imputed to any Other Couhig Partners Firm Lawyers,
Nor to Edwards   .   .   .   .   .   .   .   .   .   14

Conclusion   .   .   .   .   .   .   .   .   .   .   16

Certificate of Service   .   .   .   .   .   .   .   .   .   17

## **Table of Authorities**

ABA MODEL RULE OF PROFESSIONAL CONDUCT 1.12(a)   .   .   .   .   1, 8, 10

ABA MODEL RULE OF PROFESSIONAL CONDUCT 1.12(c)   .   .   .   .   2, 14, 15

In re Agent Orange, 800 F.2d 14 (2d Cir. 1986)   .   .   .   .   .   11

In re Andry, No.15-2478, 2020 WL 5982898 (E.D.La. Oct. 8, 2020),
    aff'd in relevant part, 59 F.4th 203, 207 (5th Cir. 2023)   .   .   .   9

In re Corn Derivatives Antitrust Litig., 748 F.2d 157, 162-165 (3d Cir. 1984)
    (Adams, J., concurring)   .   .   .   .   .   .   .   11

In re County of Los Angeles, 223 F.3d 990 (9th Cir. 2000)   .   .   .   .   15

EASTERN DISTRICT OF LOUISIANA LOCAL RULE 83.2.3   .   .   .   .   9

In re Katrina Canal Breaches Consol. Litig., No.05-4182, 2008 WL 3845228
    (E.D.La. Aug. 13, 2008)   .   .   .   .   .   .   .   .   9, 11

Lazy Oil Co. v. Witco Corp., 166 F.3d 581 (3rd Cir. 1999)   .   .   .   .   11

LOUISIANA CODE OF JUDICIAL CONDUCT, Compliance, Section E   .   .   .   12

LOUISIANA CODE OF JUDICIAL CONDUCT, Canon 2   .   .   .   .   .   9, 12-13

LOUISIANA CODE OF JUDICIAL CONDUCT, Canon 3   .   .   .   .   .   9, 12-13

LOUISIANA CODE OF CIVIL PROCEDURE ARTICLE 151   .   .   .   .   8, 13

LOUISIANA RULE OF PROFESSIONAL CONDUCT 1.12(a)   .   .   .   .   1, 8, 10

LOUISIANA RULE OF PROFESSIONAL CONDUCT 1.12(c)   .   .   .   .   2, 14, 15

Meyer v. Foti, 720 F.Supp. 1234 (E.D.La. 1989)   .   .   .   .   15

OFFICIAL COMMENT [25] to ABA Model Rule 1.7   .   .   .   .   .   10-11

OFFICIAL COMMENT [10] to ABA Model Rule 1.11   .   .   .   .   11

OFFICIAL COMMENT [1] to ABA Model Rule 1.12   .   .   .   .   10, 11

Poly Software Int'l v. Datamost Corp., 880 F.Supp. 1487 (D.Utah 1995)   .   .   11

White v. Nat'l Football League, 822 F.Supp. 1389 (D.Minn. 1993),
    aff'd, 41 F.3d 402 (8th Cir. 1995), cert. denied, 515 U.S. 1137 (1995)   .   11

**The 24th JDC Appointment and CMO Process**

In December of 2021, the 24th Judicial District Court issued a Hurricane Ida Case Management Order establishing a Streamlined Settlement Process for first-party property insurance claims.[3]  Don Massey and Blair Constant were appointed to serve as Special Masters, along with Jonathan Pedersen, a member of the Howard & Reed Law Firm.[4]

Under the CMO, there is no overarching appointment that reaches across all cases.  Rather, a Special Master is assigned individually to each case.  Nor does the CMO provide authority to the Special Masters to issue Orders, directives, or otherwise control cases – particularly cases not specifically assigned to them.[5]

The CMO requires parties to participate in an Initial Conference (Phase I), a mandatory mediation (Phase 2), and a Final Conference (Phase 3).  Phase 1 and 3, which are predominantly administrative in nature, are convened and conducted by the Special Master assigned to each case. In the Phase 1 conference, the Special Master generally enquires about the status of mandatory disclosures, and, if incomplete, when they might be completed.  In those cases where the parties have authority to discuss settlement, the Special Master will typically determine whether it would be productive to conduct detailed discussions at that time.  More commonly, however, the focus is on identifying additional information necessary for counsel to evaluate the case and seek

---

[3] *See generally* STANDING CASE MANAGEMENT ORDER REGARDING CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA, 24th Judicial District Court for the Parish of Jefferson (December 29, 2021) (*en banc*) (submitted herewith as EXHIBIT 4).  [The Special Masters were re-appointed in December of 2022; the terms and procedures remain in all material respects the same]

[4] *See* CMO, Section 2, p.3.

[5] *See generally* MASSEY DECLARATION, ¶¶4-22 (submitted herewith as EXHIBIT 1); CMO, Sections 2-3, at pp.3-9.

authority for future resolution.  With these next steps identified, the parties are then assigned to a mediator, who will conduct a more intensive mediation with the parties.[6]

As Hurricane Ida cases are filed in the 24th JDC, they are identified and tracked in software developed and owned by Special Master Services.  The CMO does not trigger any assignment or involvement of a Special Master unless and until a responsive pleading is filed.  Once an answer is filed, a Special Master is randomly assigned to an individual case.[7]

Once a case is assigned, it is the responsibility of the assigned Special Master to determine the status of the case, verify that the Special Master has no conflict of interests, (or otherwise request allotment of the case to another Special Master), and then commence administration of that case in the Streamlined Settlement Process, starting with the Phase 1 Initial Conference.[8]

As noted, most matters proceed to Phase 2 (Mediation), following which the Special Master becomes inactive, unless some unforeseen issue arises that requires his attention (*e.g.* outstanding disclosure problems impeding settlement discussions; mediator unable to serve after agreeing to appointment;  scheduling issues;  requests to reinspect property;  etc.).   If the case is not resolved in the Mediation Phase, the case progresses to Phase 3 (Final Conference).  Overwhelmingly, very few cases have not resolved, and moved into Phase 3.[9]

In those few cases that move into Phase 3, the assigned Special Master will discuss any outstanding issues with the parties at the Final Conference. They will address settlement status, identify any impediments to settlement that might be addressed, undertake a last attempt to settle the case, and, finally, discuss a proposed scheduling order for the Court.  Once the Certification

---

[6] *See* MASSEY DECLARATION, ¶17; CMO, Section 3, pp.6-9.

[7] *See* MASSEY DECLARATION, ¶10.

[8] *See* MASSEY DECLARATION, ¶14.

[9] *See* MASSEY DECLARATION, ¶19; CMO, Section 3, pp.6-9.

and Recommendation are submitted, the assigned Special Master is no longer involved in the case at issue, which is removed from the Streamlined Settlement Program and proceeds through the normal civil litigation process.[10]

**<u>MMA-Related Case Activity within the 24th JDC Process</u>**

In the wake of the widespread media attention regarding MMA, Couhig Partners was approached by a potential client, and a meeting was scheduled for the following week. Neither Mr. Massey nor Mr. Constant participated in those discussions or that client meeting.[11]

At that time, Massey and Constant began to assess their involvement in the Streamlined Settlement Process with any MMA-related case, and whether to recuse themselves from MMA matters in the 24th JDC going forward. On March 6, 2023, Constant conducted an inventory of all MMA cases in the 24th JDC and determined that there were only 18 cases filed with MMA as counsel; of those, responsive pleadings had only been filed in ten; and of those ten, only two cases had been assigned to Massey, and only four assigned to Constant, with the other four cases assigned to Pedersen.[12]

In these cases, the only activity which had occurred was limited to two basic ministerial acts.  In a Constant-assigned case, the extent of his involvement was to conduct an Initial Conference with two MMA lawyers representing a homeowner and a counsel for the defense.  Due to the publicity stemming from the Insurance Commissioner's finding and the hearings before Magistrate Judge North and Judge Cain, the plaintiff's counsel was prompted to provide proof of MMA's representation of the client at issue, and the conference was concluded shortly thereafter

---

[10] *See* MASSEY DECLARATION, ¶22; CMO, Section 3, pp.6-9.

[11] *See* COUHIG DECLARATION, ¶4 (submitted herewith as EXHIBIT 3).

[12] *See* CONSTANT DECLARATION, ¶7 (submitted herewith as EXHIBIT 2).

so that defense counsel could obtain client approval to proceed.[13]  In a Massey-assigned case, Mr. Massey sent an e-mail to the parties setting an Initial Conference, but nothing moved forward given the suspension of MMA counsel.[14]  No other interaction occurred by Massey or Constant on any MMA-related case.

During this same timeframe, Couhig Partners analyzed the issue of potential conflicts, specifically including any potential ethical prohibitions of Couhig Partners, Massey and/or Constant to participate in a claim against the MMA Law Firm, and/or others who aided its improper solicitation of clients in Louisiana Hurricane cases.  Each of three attorneys reviewing the issue – Lemann, Massey, and Constant – concluded that the Louisiana Rules of Professional Conduct do not prohibit Couhig attorneys from participating in matters in which Couhig Partners' clients have asserted claims against MMA.  Their independent and unanimous conclusion was that, simply put, no 24th JDC cases in the Streamlined Settlement Program constitute the "same matter" as the claims against MMA in this case.  And, equally dispositive in their determination, no Couhig Partners attorney had been "personally or substantially" involved in any 24th JDC Streamlined Settlement Program matter involving Louis Carter or MMA.[15]

Next, Lemann, Massey, and Constant each determined that the Louisiana Code of Civil procedure does not provide a basis for mandatory recusal by Massey or Constant from any Streamlined Settlement Process CMO case.  None of the bases for mandatory recusal set forth by the Louisiana Legislature are present in this situation.[16]

---

[13] *See* CONSTANT DECLARATION, ¶¶3-6 .

[14] *See* MASSEY DECLARATION, ¶33.

[15] *See* MASSEY DECLARATION, ¶27; CONSTANT DECLARATION, ¶9; COUHIG DECLARATION, ¶6. (*See also, generally,* LOUISIANA RULE OF PROFESSIONAL CONDUCT 1.12(a))

[16] *See* MASSEY DECLARATION, at ¶27; CONSTANT DECLARATION, ¶9; COUHIG DECLARATION, ¶6.  (*See also, generally,* LA. CODE CIV. PRO. ART. 151)

Finally, they determined that there was violation of the Code of Judicial Conduct.[17]

Nevertheless, to avoid even the hint of any impropriety, Mr. Massey and Mr. Constant decided to recuse themselves from any existing and/or future 24th JDC Streamlined Settlement Program case in which any MMA lawyer had been involved.[18]

Which all occurred *prior* to any personal involvement of Mr. Massey or Mr. Constant in the present case.[19]

Notably, the few cases filed in the 24th JDC by MMA make up a markedly small percentage of the total number of 24th JDC cases, (*i.e.* around 1% of all filed cases).[20]   The administrative burden of Massey and Constant's decision to recuse is *de minimis* and non-consequential, in terms of the effect on the Streamlined Settlement Process.


## There Is No Conflict Under Rule 1.12(a)

When considering potential disqualification and other ethical standards governing lawyers practicing here in the Eastern District of Louisiana, the Court generally looks to: (1) its Local Rules; (2) the ABA Model Rules of Professional Conduct; (3) the Model Code of Professional Conduct; and (4) the Louisiana Rules of Professional Conduct, which are expressly adopted by the Court and incorporated under Local Rule 83.2.3. *See generally* In re Andry, No.15-2478, 2020 WL 5982898 (E.D.La. Oct. 8, 2020), *aff'd in relevant part,* 59 F.4th 203, 207 (5th Cir. 2023); In re Katrina Canal Breaches Consol. Litig., No.05-4182, 2008 WL 3845228 at *3 (E.D.La. Aug. 13,

---

[17] *See generally* LA. CODE OF JUDICIAL CONDUCT, Canons 2 and 3.

[18] *See* MASSEY DECLARATION, at ¶¶27-28; CONSTANT DECLARATION, ¶¶9-10.

[19] *See* MASSEY DECLARATION, at ¶28; CONSTANT DECLARATION, ¶10; COUHIG DECLARATION, ¶10.

[20] *See* CONSTANT DECLARATION, ¶7.

2008).  Both the ABA Model Rules and the Louisiana Rules of Professional Conduct provide in their respective Rules 1.12(a) that:

> a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing.[21]

Thus, a conflict arises only with "personal" and "substantial" involvement in the same "matter".

Here, however, the Special Masters' involvement in the MMA-related cases was merely administrative. *See, e.g.,* OFFICIAL COMMENT [1] to ABA Model Rule 1.12 ("the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits").

Moreover, and perhaps more importantly, they are not acting as attorneys in the same matter.  The 24th JDC proceedings involved first-party insurance claims against defendants who are ***not*** parties to the present action.  Further, neither Massey nor Constant presided over any matter involving the plaintiff, Louis Carter, III, as an adjudicative officer.

The only conceivable "conflict" would therefore relate to the claims of putative class members.  Significantly, in this regard, the Courts have held that the ordinary conflicts Rules do not mechanically apply to the relationship between proposed class counsel and the members of a putative class.  As noted in OFFICIAL COMMENT [25] to ABA Model Rule 1.7:

> When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule. Thus, the lawyer does not typically need to get the consent of such a person before representing a client suing the person in an unrelated matter. Similarly, a lawyer seeking to represent an opponent in a

---

[21] ABA MODEL RULE 1.12(a); LA. RULE PROF. CONDUCT 1.12(a).

> class action does not typically need the consent of an unnamed member of the
> class whom the lawyer represents in an unrelated matter.

This principle has been recognized by this Court. *See* <u>In re Katrina Canal Breaches</u>, <u>supra</u>, 2008 WL 3845228 at *4 (when a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying Rule 1.7). *See also, e.g.,* <u>Lazy Oil Co. v. Witco Corp.</u>, 166 F.3d 581, 588-591 (3rd Cir. 1999); <u>White v. Nat'l Football League</u>, 822 F.Supp. 1389, 1405 (D.Minn. 1993), *aff'd,* 41 F.3d 402, 408 (8th Cir. 1995), *cert. denied,* 515 U.S. 1137 (1995); <u>In re Agent Orange</u>, 800 F.2d 14, 18-19 (2d Cir. 1986); <u>In re Corn Derivatives Antitrust Litig.</u>, 748 F.2d 157, 162-165 (3d Cir. 1984) (Adams, J., concurring).

"Matter" in the context of Rule 1.12 runs parallel with its application to former government lawyers in Rule 1.11.[22]  The commentary to rule 1.11(e) advises that "a lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed."[23]  While, of course, the same lawsuit is the same matter, courts have found that the same "matter" is not involved when "there is lacking the discrete, identifiable transaction of conduct involving a particular situation and specific parties." <u>Poly Software Int'l v. Datamost Corp.</u>, 880 F.Supp. 1487, 1492-1493 (D.Utah 1995) (holding that "the lawsuit between Su and Wang is legally distinct from the earlier Micromath litigation because it involves a separate dispute between differing parties" and thus "it is not the same 'matter' as that term is understood in Rule 1.12 or 1.11").

This Louis Carter case seeks redress against a law firm and its agents and abettors in a scheme to represent plaintiffs without plaintiffs' permission.  The defendants in this case are ***not***

---

[22] *See* OFFICIAL COMMENT [1] to ABA Model Rule 1.12 ("This Rule generally parallels Rule 1.11").

[23] *See* OFFICIAL COMMENT [10] to ABA Model Rule 1.11.

defendants in the Jefferson Parish proceedings. Although there is some overlapping factual background, the focus of the present action is the solicitation, retention and assignment of ostensible "clients", while the focus of the 24th JDC actions is the entitlement of property owners to covered first-party property damage losses under their insurance policies. The causes of action are different, as are the damages claimed.

Even assuming, *arguendo,* that the Ida-related insurance claims of unnamed putative class members in 24th JDC might be considered part of the same "matter" under Rule 1.12(a), no one at Couhig participated "personally or substantially" in those cases. Massey and Constant were exclusively exercising "administrative responsibility" and in the case of the MMA matters only Constant had any direct involvement with MMA attorneys. Neither Massey nor Constant is in possession of confidential information.[24] The extent of Constant's involvement was limited to one case where an initial conference was conducted and deferred before even concluding. Massey only sent a single email in an attempt to schedule a conference, which never materialized.

## Massey and Constant's Concurrent and Continued Service as Special Masters Gives rise to No Potential Conflicts

Although not directly raised by Your Honor, Plaintiff's Counsel – even prior to becoming involved in the present action – investigated the extent to which a basis for recusal as Special Master was or remains present.

As part of the Code of Judicial Conduct, Special Masters are required to comply with several of the Judicial Canons.[25] This includes avoidance of an appearance of impropriety in all activities, under Canon 2, and impartiality, as provided in Canon 3.

---

[24] As noted in his Declaration, Mr. Constant did momentarily review a screen-shot of a purported MMA client contract with a 24th JDC plaintiff, but did not receive any other substantive information relevant to that plaintiff's or Mr. Carter's claims. *See* CONSTANT DECLARATION, ¶¶5, 14; *see also* MASSEY DECLARATION, ¶34.

[25] *See* Louisiana Supreme Court, COMPLIANCE WITH THE CODE OF JUDICIAL CONDUCT, Section E.

Under Canon 3, recusal is appropriate where "impartiality might reasonably be questioned", with "impartiality" or "impartial" denoting the absence of bias or prejudice in favor of, or against, particular parties or classes of parties.

Under the Louisiana Code of Civil Procedure, grounds for recusal exist where:

> The judge has been employed or consulted as an attorney in the cause or has previously been associated with an attorney during the latter's employment in the cause, and the judge participated in representation in the cause.
>
> ….
>
> The judge is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys or any witness to such an extent that the judge would be unable to conduct fair and impartial proceedings.
>
> ….
>
> A judge of any trial or appellate court shall also be recused when there exists a substantial and objective basis that would reasonably be expected to prevent the judge from conducting any aspect of the cause in a fair and impartial manner.[26]

While Constant and Massey have recused themselves from any and all MMA-related 24th JDC cases, it would not seem to be required under these rules. Constant and Massey harbor no bias against any insurance company. Likewise, they harbor no pre-disposition to the merits of any plaintiff's claims for insurance proceeds. The Couhig Partners team is merely advocating for victims in an unrelated litigation regarding solicitations barred by the lawyer Rules of Professional Conduct and other statutes. Plaintiffs seek disgorgement legal fees for legal services that were never properly authorized. The present lawsuit does not turn on the merits nor the future resolution of particular claims for insurance benefits for storm damages.

---

[26] LA. CODE CIV. PRO. ART. 151(A)(2), (A)(4) and (B).

Likewise, the "cause" for the purposes of the Louisiana Code of Civil Procedure would be the Streamlined Settlement Process first-party insurance claims.  That is not the same as this lawsuit against a law firm and those that assisted it in its scheme to improperly convert fees.

Yet despite of the lack of a basis for mandatory recusal by Massey or Constant from any Streamlined Settlement Process CMO case, they have, to avoid even an arguable appearance of impropriety, chosen to do so with respect to any MMA-related case – and they did so *prior* to their involvement in this litigation.

Their very limited involvement in a handful of isolated MMA-related cases occurred well before the firm's involvement in the present matter, with no material confidential information obtained by Massey or Constant,[27] nor provided to other Plaintiff's Counsel herein.

## Even Assuming *Arguendo* a "Conflict" with Respect to Constant and/or Massey, Such Conflict is Not Imputed to any Other Couhig Partners Firm Lawyers, nor to Edwards

Both ABA Model Rule and Louisiana Professional Rule 1.12(c) provide that:

> If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
>
> > (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
> >
> > (2) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this rule.

While not required under the circumstances, Mr. Massey and Mr. Constant have decided – out of an abundance of caution, and in order to prioritize the interests and needs of the putative

---

[27] *See* FOOTNOTE 24, *supra.*

class – to withdraw from the present matter, and to be screened off from the other attorneys with respect to the litigation.[28, 29, 30]  Undoubtedly, therefore, Mr. Couhig, Mr. Lemann, Mr. Cavignac, Mr. Couhig, Mr. Martin, the Couhig Partners Law Firm, and Daniel Edwards should be permitted to continue representing Mr. Carter and the putative class.[31]

## Exhibits

1. DECLARATION OF DONALD C. MASSEY (April 24, 2023)

2. DECLARATION OF BLAIR C. CONSTANT (April 24, 2023)

3. DECLARATION OF ROBERT E. COUHIG, JR. (April 24, 2023)

4. STANDING CASE MANAGEMENT ORDER RE CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA, 24th Judicial District Court, State of Louisiana (Dec. 29, 2021)

---

[28] See MASSEY DECLARATION, ¶35; CONSTANT DECLARATION, ¶16; COUHIG DECLARATION, ¶16.

[29] In addition, or alternatively, the proposed class could be re-defined to simply carve out MMA "clients" who had or have Ida-related insurance cases pending in the 24th JDC.

[30] Plaintiff's Counsel can also supply opposing counsel and/or the Court with any additional information that might be necessary and appropriate to verify compliance with the Rules as contemplated by Rule of Professional Conduct 1.12(c)(2).

[31] See, e.g., Meyer v. Foti, 720 F.Supp. 1234, 1242 (E.D.La. 1989) (motion for disqualification is without merit where requisite screening measures have been taken).  See also, e.g., In re County of Los Angeles, 223 F.3d 990, 996 (9th Cir. 2000) (although the court would "accept the costs of automatic disqualification if it were the only way to ensure that lawyers honor their duties of confidentiality and loyalty … it is not.  A client's confidences can also be kept inviolate by adopting measures to quarantine the tainted lawyer. An ethical wall, when implemented in a timely and effective way, can rebut the presumption that a lawyer has contaminated the entire firm. The Model Rules explicitly approve the use of screening procedures to avoid vicarious disqualification where a former judicial officer or government lawyer has joined the firm"). Significantly, here, neither Massey nor Constant engaged in any substantive mediations with MMA or its clients, nor were privy to any of their confidences. See FOOTNOTE 24, supra.

## <u>Conclusion</u>

Plaintiff's Counsel do not believe that any disqualifying conflict exists, for the reasons set forth above.  Careful consideration was given to the involvement of Massey and Constant prior to the institution of this suit, including their recusal from the 24th JDC Streamlined Settlement Process in any and all MMA-related cases.  At the same time, the Couhig Partners Law Firm and Mr. Edwards remain committed to the pursuit of this case.  The scheme perpetrated upon countless property owners has involved the same conduct by the same players, and seems well-suited to class treatment.  Plaintiff's Counsel, out of an abundance of caution, and in an effort to prioritize the class' interests, will screen Mr. Massey and Mr. Constant from further involvement in the present litigation.  Accordingly, this case should be allowed to proceed.

This <u>25</u>[th] day of <u>April</u>, <u>2023</u>.

Respectfully Submitted:

_____/s/ Stephen J. Herman_____
**Stephen J. Herman**, La. Bar No. 23129
**HERMAN HERMAN & KATZ LLC**
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Telephone: (504) 680-0554
E-Mail: sherman@hhklawfirm.com

*Counsel for Robert E. Couhig, Jr.,*
*Donald C. Massey, Jonathan P. Lemann,*
*Jason A. Cavignac, Robert. E. Couhig, III,*
*Blair C. Constant, R. Tate Martin II,*
*and Couhig Partners, LLC.*

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that the above and foregoing Brief will be filed *via* the Court's CM/ECF

Electronic Filing system, thereby effecting electronic service on all parties, this <u>25th</u> day of <u>April</u>,

<u>2023</u>.

_____/s/ Stephen J. Herman_____