UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUIS CARTER, III, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED, | Civil Action No. 23-949 |
| *Plaintiff*, | Section J<br>Judge Carl Barbier |
| VS. | |
| McCLENNY, MOSELEY & ASSOCIATES, PLLC, ET AL. | Division 3<br>Magistrate Judge Donna Phillips Currault |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
ALL CLAIMS AGAINST R. WILLIAM HUYE, III**

Defendant, R. William Huye, III, through undersigned counsel, respectfully submits this memorandum in support of his Motion to Dismiss All Claims Against R. William Huye, III. That motion is being submitted solely in the alternative instance that the Court abstains from exercising jurisdiction pursuant to the Class Action Fairness Act ("CAFA").[1] If the Court abstains from exercising jurisdiction, Mr. Huye respectfully requests that Mr. Carter's claims against him be dismissed prior to remand because those claims are subject to a binding arbitration agreement under the Federal Arbitration Act and doctrine of equitable estoppel.

**I.    Introduction**

The Plaintiff, Louis Carter, III, entered into a binding arbitration agreement for any dispute "with respect to any matters or question arising out of or relating to" the Assignment of Benefits

---

[1] *See* Defendant Richard William Huye, III's Memorandum Relative to Jurisdiction (R. Doc. 26) at 14.

1

("AOB") that Mr. Carter entered into with Apex or its related Work Order.[2] Thus, co-defendant Apex Roofing and Restoration, LLC ("Apex") has moved to dismiss or stay the claims against it pending arbitration.[3] For reasons that overlap with those presented in Apex's motion, the Arbitration Agreement also applies to Mr. Carter's claims against Mr. Huye under the doctrine of equitable estoppel.

The doctrine of equitable estoppel requires the arbitration of a signatory's claims against a non-signatory in two independently sufficient circumstances, "collectively referred to as the 'intertwined-claims test.'" *In re Apple iPhone 3G and 3GS MMS Mktg. & Sales Pracs. Litig.*, 864 F. Supp. 2d 451, 459 (E.D. La. March 29, 2012) (Barbier, J.). Both are present in this case. *First*, Mr. Carter "must rely on the terms of the written agreement [the AOB] in asserting [his] claims against the nonsignatory" defendants. *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000). *Second*, Mr. Carter charges both signatory and non-signatory Defendants with "interdependent and concerted misconduct." *Id.* As this Court has recognized, "[w]here both bases" of the doctrine of equitable estoppel "are present, the [equitable estoppel] doctrine is 'much more readily applicable.'" *Manta Ray Offshore Gathering Co., L.L.C. v. Shell Offshore, Inc.*, 04-2553, 2006 WL 4043199, at *2 (E.D. La. Aug. 8, 2006) (Barbier, J.) (quoting *Grigson*, 210 F.3d at 527).

Mr. Carter cannot base his claims against Mr. Huye on the AOB while avoiding the arbitration that the AOB requires, nor can litigation equitably proceed on Mr. Carter's claims

---

[2] R. Doc. 3-2 (AOB between Mr. Carter and Apex, signed March 15, 2022) ("Arbitration Agreement"). "[T]he AOB references the obligations of the Work Order and alleges that both documents together constitute the same agreement under Louisiana law and this Court's jurisprudence, such that the AOB's arbitration provision extends to any dispute regarding the contemporaneously executed Work Order as well." Apex's Memorandum in Support (R. Doc. 3-1) at 2 n.3.

[3] R. Doc. 3.

against Mr. Huye while Mr. Carter's claims against Apex proceed in arbitration. Accordingly, Mr. Huye requests that the Court dismiss Mr. Carter's claims against Mr. Huye prior to remand if the Court elects not to exercise its jurisdiction under CAFA.

I.  **BACKGROUND**

The Petition alleges that Mr. Carter sustained roof damage to his home during a storm that occurred in December 2021.[4] Soon after, a representative of Apex allegedly approached Mr. Carter at his home and provided a free assessment of the roof damage caused by that storm.[5] This Apex representative then allegedly encouraged Mr. Carter to use Apex to make repairs to his roof so that he could avoid the deductible under his insurance plan.[6]

Apex has explained that individuals who wish to use Apex for roof repair in Louisiana must sign two documents: (1) an Assignment of Benefits, in which the insured agrees to assign "any and all rights, benefits, proceeds and causes of action" under an insurance claim in exchange for Apex's services[7]; and (2) a work order detailing the scope of work to be performed by Apex.[8] The AOBs included an arbitration clause that instructs: "If a dispute shall arise between Company and Owner's Representative with respect to *any* matters or questions arising out of or *relating to*" the AOB "or the breach thereof, such dispute, other than collection matters, shall be decided by arbitration administered by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. . . . This Agreement shall be governed by the laws of the

---

[4] Petition (R. Doc. 1-2) ¶ 10, 33.

[5] *Id.* ¶ 11.

[6] *Id.* ¶ 14.

[7] R. Doc. 3-2 (AOB between Mr. Carter and Apex, signed March 15, 2022).

[8] *See* R. Doc. 3-3 (Work Order).

3

State of Louisiana."[9] Mr. Carter agreed to the AOB and Work Order on March 15, 2022. Thus, he agreed to arbitrate any dispute "relating to" the AOB.[10]

On March 13, 2023, Mr. Carter brought this putative class action lawsuit against McClenny, Mosely & Associates, PLLC ("MMA"); James McClenny; John Zachary Moseley; Mr. Huye; Tort Network, LLC ("Velawcity"); and Apex, alleging that these defendants "conspired" together "in a vast scheme involving making illegitimate claims to insurers in the state on behalf of clients that MMA did not actually represent."[11] These claims and their alleged factual predicates each relate to either the AOB or the alleged interdependent and concerted conduct by the signatory and non-signatory Defendants. Thus, as explained below, Mr. Carter's claims against Mr. Huye are subject to binding arbitration.

## II. LAW AND ARGUMENT

### A. The Federal Arbitration Act's Presumption of Arbitrability Applies to Non-signatories of an Arbitration Agreement.

The Federal Arbitration Act ("FAA") established a "federal policy favoring arbitration, requiring that" courts "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quotations and citations omitted). Under this policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24–25 (1983). There is a strong presumption in favor of arbitration, and "parties

---

[9] *See* R. Doc. 3-2 (AOB) (emphasis added).

[10] The only carve-out is "collection matters," which are not at issue in this case.

[11] Petition (R. Doc. 1-2) ¶ 8.

to such agreements cannot avoid them by casting their claims in tort, rather than in contract." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).

The FAA's national policy favoring arbitration applies to non-signatories of an arbitration agreement. "[P]ursuant to an equitable estoppel doctrine, a non-signatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff." *Id.* The Fifth Circuit has articulated two bases under which a non-signatory can compel arbitration under the theory of equitable estoppel, each of which is independently sufficient to require arbitration. The first basis for equitable estoppel arises when the plaintiff "must rely on the terms of the written agreement in asserting its claims against the nonsignatory" defendants. *Id.* at 527. In this context, "arbitration is appropriate" when "a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement." *Id.* The second basis for equitable estoppel applies when "a signatory non-defendant is charged with interdependent and concerted misconduct with a non-signatory defendant." *Id.* at 528. In these circumstances, a court should refer any arbitrable claims against a non-signatory to arbitration. "Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.* at 527 (quoting *Franklin*, 177 F.3d at 947).[12]

As this Court has recognized, "[w]here both bases" of equitable estoppel "are present, the doctrine is 'much more readily applicable.'" *Manta Ray Offshore Gathering Co., L.L.C.*, 2006 WL 4043199, at *2 (quoting *Grigson*, 210 F.3d at 527). This is because "[t]he linchpin for equitable estoppel is equity-fairness. For the case at hand, to not apply this intertwined-claims basis to

---

[12] *See also City of Kenner v. Certain Underwriters at Lloyd's, London*, 21-2064, 2022 WL 307295, at *3 (E.D. La. Feb. 2, 2022) (Barbier, J.) (Otherwise, "arbitrating claims against [one defendant] while litigating claims against [others] could yield inconsistent results, waste time and resources, and thwart federal policy favoring arbitration.") (cleaned up).

5

compel arbitration would fly in the face of fairness." *Grigson*, 210 F.3d at 528. Further, "[e]quitable estoppel is also more likely to apply when the party resisting arbitration is a signatory, as is the case here, as opposed to when the resisting party is a non-signatory." *In re Apple*, 864 F. Supp. 2d at 459.

Finally, once a party asserts that a claim against it is subject to arbitration, it is the party asserting federal jurisdiction who "bears the burden of proof for a motion to dismiss under" Rule 12(b)(1). *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009). If the Court determines that the plaintiff's claims are subject to a valid arbitration agreement, then the Court may dismiss those claims with prejudice rather than staying the case. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). In making this determination under either "Rule 12(b)(1) and Rule 12(b)(3), the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).[13]

### B. Mr. Carter's Claims Against Mr. Huye Rely on the AOB and Are Thus Subject to Binding Arbitration.

The first basis of equitable estoppel is met here because Mr. Carter "must 'rely on the terms of the written agreement [the AOB] in asserting [his] claims against the nonsignatory.'" *In re*

---

[13] "The Fifth Circuit has not "definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for motions to dismiss based on an arbitration or forum-selection clause.'" *Glover v. Regions Bank*, 20-545, 2020 WL 2197915, at *1 (E.D. La. May 6, 2020) (quoting *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010)). Under Rule 12(b)(1), "the court may consider '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Jones v. Flower Foods, Inc.*, 21-1858, 2022 WL 1503410, at *2 (E.D. La. May 12, 2022) (quoting *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008)). "Similarly, to decide a Rule 12(b)(3) motion, the court may look outside of the complaint and its attachments and review the complaint supplemented by the undisputed facts evidenced in the record or by undisputed facts plus the court's resolution of disputed facts." *Glover v. Regions Bank*, 20-545, 2020 WL 2197915, at *1 (E.D. La. May 6, 2020) (quotations omitted).

*Apple*, 864 F. Supp. 2d at 459 (quoting *Grigson*, 210 F.3d at 527). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Grigson*, 210 F.3d at 527. The Petition focuses on the AOBs and their effects on Apex, Mr. Carter, and MMA.[14] Mr. Carter's claims against Mr. Huye thus "aris[e] out of or relat[e] to" the AOB that Mr. Carter entered into with Apex.[15]

Mr. Carter's specific claims against Mr. Huye further "aris[e] out of or relat[e] to" the AOB because they are premised primarily on the substance of the AOB, the AOB's effects, and conduct surrounding MMA's implementation of the AOB's provisions. Mr. Carter alleges, *for example*, that (1) the AOB did not have any reference to MMA or its principals[16]; (2) MMA and its principals "falsely act[ed] as counsel" for Mr. Carter by presenting Mr. Carter's claim to his insurance company "[d]espite the language in the Assignment of Benefits"[17]; (3) MMA represented Apex's interests rather than the interests of the insured[18]; (4) MMA and its principals received "confidential information and correspondence regarding the property owners' claims" arising from their actions taken in connection with the AOB[19]; and (5) MMA and its principals received

---

[14] *See, e.g.*, Petition (R. Doc. 1-2) ¶¶ 10-37 (alleging that MMA wrongfully advised Mr. Carter and his insurer that it represented him rather than explaining that it represented Apex pursuant to a partial assignment of benefits from Mr. Carter); *id.* ¶¶ 38-55 (the "Apex Scheme"); *id.* at ¶ 47 (summarizing the alleged "scheme": "Despite the language in the Assignment of Benefits assigning the property owner's right to make a claim against the insurer to Apex, Apex wrongfully conspired with MMA, and its principals, to present the property owner's claim to the insurance company by MMA falsely acting as counsel for the property owners").

[15] R. Doc. 3-2.

[16] Petition (R. Doc. 1-2) ¶¶ 19, 46. To be clear, however, Mr. Huye is not a principal of MMA. He was a non-equity partner before his resignation in April 2023.

[17] *Id.* ¶ 47–49.

[18] *Id.* ¶ 50.

[19] *Id.* ¶ 51.

7

property owners' checks and "unwarranted and unearned" legal fees arising from their representation in connection with the AOB.[20]

Mr. Carter's core claim is that the AOB was the mechanism underlying an alleged conspiracy among the Defendants to make illegitimate claims to insurance companies and gain unearned fees. The core allegation against Mr. Huye is that he misrepresented his representation to insurers resulting in some alleged harm to Mr. Carter. However, the source of Mr. Huye's alleged "misrepresentation" is the AOB between Mr. Carter and Apex. Mr. Huye was allegedly pursuing Mr. Carter's rights as an insured through the assignment that Mr. Carter gave to Apex. Thus, the claims made by Carter against Mr. Huye are directly traceable to the Carter/Apex AOB, and reliant on both the existence and scope of that assignment contract. Mr. Carter thus relies substantially on the AOB as the basis of his allegations,[21] requiring that his claims against Mr. Huye be arbitrated. *See Grigson*, 210 F.3d at 529; *Manta Ray Offshore Gathering Co., L.L.C.*, 2006 WL 4043199, at *2 (finding that plaintiff's allegations against signatory and non-signatory defendants premised on obligations under a construction and operation agreement subject to arbitration equitably estopped plaintiff from refusing to arbitrate claims against non-signatory defendants); *In re Apple*, 864 F. Supp. 2d at 464 n.7 (finding that where "Plaintiffs' allegations must, in large part, rely on the terms" of a contract with an arbitration agreement, the non-signatory defendant satisfies the "intertwined-claims" test).

Jurisprudence confirms that the claims against Mr. Huye are subject to arbitration. For example, in *In re Apple*, the Court confirmed that a non-signatory to an arbitration agreement had

---

[20] *Id.* ¶ 52–54.

[21] Notably, the Fifth Circuit "focus[es] on factual allegations in the complaint rather than the legal causes of action asserted" in determining whether claims must be arbitrated. *Waste Mgmt. v. Residuos Industrialies Multiquim, S.A. de C.F.*, 372 F.3d 339, 344 (5th Cir. 2004).

a right to enforce it relative to the claims in a putative class action. In that case the plaintiffs had agreed to arbitrate their claims against AT & T Mobility, L.L.C. under a Wireless Services Agreement ("WSA"). *In re Apple*, 864 F. Supp. 2d at 464. The plaintiffs alleged, on behalf of a putative class, that they were charged for multimedia messaging services by AT & T under the WSA even before the multimedia message service had become available on their iPhones. *Id.* The plaintiffs named both AT & T and Apple as defendants. The Court enforced the arbitration agreement relative to both defendants, even though Apple was not a signatory to the WSA. The Court explained that the plaintiffs' "primary claims . . . against Apple would require the Court to evaluate and interpret AT & T's WSA and billing statements." *Id.* at 464. Similarly, Mr. Carter's allegations against Mr. Huye related to the alleged "Apex Scheme" would require this Court to "evaluate and interpret" the AOB at virtually every step of the litigation.

In sum, Mr. Carter "cannot . . . have it both ways." *Grigson*, 210 F.3d at 528 (quotations omitted). He "cannot, on the one hand, seek to hold the non-signatory [Mr. Huye] liable pursuant" to the AOB, "which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because [Mr. Huye] is a non-signatory." *Id.* The first basis of the "intertwined-claims test" requires the arbitration of Mr. Carter's claims against Mr. Huye.

### C. Mr. Carter Charges the Signatory and Non-signatory Defendants with Interdependent and Concerted Misconduct.

The second independently sufficient basis for applying equitable estoppel is also met here because Mr. Carter has alleged substantially "interdependent and concerted misconduct" by Apex (a signatory to the AOB), and Mr. Huye (a non-signatory to the AOB) relative to the execution, application, and effects of the AOB.

9

Throughout the Petition, Mr. Carter alleges conspiracy and joint misrepresentations to advance the Defendants' alleged scheme to gain unearned fees from illegitimate insurance claims. Mr. Carter alleges, *for example*, that:

- "MMA entered into agreements or otherwise conspired with Velawcity, Apex, and likely other entities . . . in a vast scheme involving making illegitimate claims to insurers in the state on behalf of clients that MMA did not actually represent."[22]

- "MMA, and its principals, conspired with Apex to perform improper solicitation of employment for MMA's economic benefit . . . ."[23]

- MMA and Mr. Huye allegedly had knowledge of and consented to Apex's solicitation of insured homeowners.[24]

- MMA and Mr. Huye allegedly "wrongfully conspired" with Apex "to present the property owner's claim to the insurance company by MMA falsely acting as counsel for the property owners."[25]

- "This scheme insured [sic] that MMA would receive an unwarranted and unearned fee and Apex would obtain the balance of the funds issued by the insurance company."[26]

- "'[MMA and its principals] participated in a fraudulent scheme involving fraudulent insurance acts' relating to the contractual arrangement and actions of MMA and Apex."[27]

Mr. Carter's allegations of interdependent and concerted misconduct thus further support the application of equitable estoppel to Mr. Carter's claims against Mr. Huye.[28] *See, e.g.*, *Grigson*,

---

[22] Petition (R. Doc. 1-2) ¶ 8.

[23] *Id.* ¶ 39.

[24] *Id.* ¶ 40.

[25] *Id.* ¶ 47.

[26] *Id.* ¶ 53.

[27] *Id.* ¶ 90. (quoting the Cease and Desist Order to MMA and Its Principals by the Louisiana Insurance Commissioner, February 17, 2023).

[28] *See also Green Tree Servicing, L.L.C. v. House*, 890 F.3d 493, 501 (5th Cir. 2018) (applying equitable estoppel when there was a "close legal relationship" between the signatory and non-signatory defendants and the signatory plaintiff invoked a contract subject to arbitration to allege "substantially interdependent misconduct" by the defendants); Apex's Memorandum in Support

210 F.3d at 530–31; *Henry v. New Orleans Louisiana Saints L.L.C.*, No. 15-5971, 2016 WL 2901775, at *12 (E.D. La. May 18, 2016) (Barbier, J.) (permitting non-signatory to compel arbitration where plaintiff's claims against the signatory "are based on the same operative facts and are inherently inseparable from" the claims against the non-signatories); *Ford Motor Co. v. Ables*, 207 Fed. App'x 443, 448 (5th Cir. 2006) (holding that vehicle manufacturer, a non-signatory to an agreement between vehicle dealership and vehicle purchasers, could compel arbitration based on plaintiff's allegations of defendants' "conspir[ing] between themselves and with others to unlawfully injure Plaintiffs" through a "scheme [that] was calculated to and in fact did cause Plaintiffs to purchase vehicles . . . based on false and fraudulent representations"). Thus, and as this Court has stated, "[t]o the extent" that any of Mr. Carter's claims "do[] not require interpreting" the AOB, "equitable estoppel is still appropriate under the 'interdependent and concerted misconduct' basis." *In re Apple*, 864 F. Supp. 2d at 464.

Equitable estoppel is warranted under this second basis for yet another reason: "arbitrating claims against one defendant [Apex] while litigating claims against others could yield inconsistent results, waste time and resources, and thwart federal policy favoring arbitration." *City of Kenner v. Certain Underwriters at Lloyd's, London*, 21-2064, 2022 WL 307295, at *3 (E.D. La. Feb. 2, 2022) (Barbier, J.) (cleaned up). If Mr. Carter's claims against Apex were referred to arbitration, it "would be especially inequitable" to maintain Mr. Carter's claims against Mr. Huye in litigation. *Grigson*, 210 F.3d at 528. Plainly, Apex would have a continued significant interest in monitoring the litigation and any adjudications relative to the AOB, which could affect the ongoing arbitration proceedings. "In such instances, that signatory [here, Apex], in essence, becomes a party, with

---

(R. Doc. 3-1) at 4 n.4 ("When APEX came to Louisiana, it retained MMA as its legal counsel to provide APEX with legal advice as to how to legally operate in Louisiana.").

11

resulting loss, *inter alia*, of time and money because of its required participation in the proceeding." *Id.*; *see also In re Apple*, 864 F. Supp. 2d at 456 (stating that because "interpretation of a contract is at issue, the parties to the contract are necessary parties"). Thus, bifurcating the AOB claims between arbitration and litigation would not only thwart federal policy favoring arbitration, but also raise the serious risk of wasting time and resources, as well as the possibility of inconsistent results between the arbitration and the litigation. *See City of Kenner*, 2022 WL 307295, at *3.

        **D.**        **Only Mr. Carter's individual claims should be submitted to arbitration because none of the parties has agreed to a class arbitration.**

        *1.*  *The Court should decide the gateway question of the availability of class arbitration.*

An agreement to arbitrate individual claims does not automatically include an agreement to submit to class arbitration. Whether class arbitration is available "is a gateway issue that is presumptively decided by courts, not arbitrators." *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 719 (5th Cir. 2019). An arbitrator can decide the availability of class arbitration only when "the parties [] clearly and unmistakably agreed to allow the arbitrator to determine that issue." *Id.* Neither Mr. Carter's briefing nor that of Apex indicates that they believe the arbitrator (if the case is to be arbitrated) should address this issue. Moreover, the Arbitration Agreement states that disputes "shall be decided by arbitration administered by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association."[29] Neither the Arbitration Agreement nor the Construction Industry Arbitration Rules makes any mention of the AAA's Supplementary Rules for Class Arbitration.[30] And, while a series of cross references could tie the

---

[29] *See* R. Doc. 3-2 (AOB).

[30] In *20/20 Communications v. Crawford*, the Fifth Circuit observed that the incorporation of AAA rules in a broadly worded arbitration agreement is "arguably relevant" to the question of whether an arbitrator can determine the availability of class arbitration, but the Court declined to

supplementary rules to the construction rules, that attempt "implicates a daisy-chain of cross-references" that does not establish a clear and unmistakable delegation of authority to the arbitrators to decide class arbitrability." *See Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 761 (3d Cir. 2016).

> 2. *Only Mr. Carter's individual claims can be arbitrated because none of the parties agreed to class arbitration.*

Parties who agree to individual arbitration do not automatically agree to class arbitration. To the contrary, parties may seek individual arbitration based on the desire to avoid some of the burdens associated with complex litigation. There are "fundamental difference[s] between class arbitration and the individualized form of arbitration envisioned by the FAA." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019). "In individual arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Id.* (internal quotation omitted). Class arbitration "lacks those benefits," "introduces new risks and costs for both sides," and "raises serious due process concerns by adjudicating the rights of absent members of the plaintiff class—again, with only limited judicial review." *Id.* (internal quotations omitted). Thus, permitting a party to pursue class claims in an arbitration "undermine[s] the central benefits of arbitration itself." *Id.* Neither silence nor ambiguity is enough to conclude that "parties to an arbitration agreement agreed to sacrifice the principal advantage of arbitration." *See id.* at 1416. Given that none of the parties in this case agreed to class arbitration, Mr. Huye respectfully submits that any arbitration should include only Mr. Carter's individual claims.

---

answer "[w]hether these provisions, standing alone, clearly and unmistakably empower the arbitrator to decide questions of class arbitrability." *Id.* at 720–21.

### III.    CONCLUSION

Solely in the event that the Court rules that it will abstain from exercising its jurisdiction under CAFA, Mr. Huye respectfully requests that the Court dismiss Mr. Carter's claims against Mr. Huye under Fed. R. Civ. P. Rules 12(b)(1) and (b)(3) prior to remand so that Mr. Carter's individual claims may be arbitrated.

                        Respectfully submitted,

                        */s/ Eva J. Dossier*
Richard C. Stanley (No. 8487)
Eva J. Dossier (No. 35753)
John P. D'Avello (No. 39082)
Brandon A. Naquin (No. 39998)
STANLEY REUTER
   THORNTON ALFORD LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile: (504) 524-0069
rcs@stanleyreuter.com
ejd@stanleyreuter.com
jpd@stanleyreuter.com
ban@stanleyreuter.com

*Attorneys for R. William Huye, III*